**ALTHEIMER & BAER, INC., Appellant,**

v.

**VERGAL BOURLAND HOME APPLIANCES et al., Appellees.**

No. 16438.

Court of Civil Appeals of Texas.

Fort Worth.

June 21, 1963.

Rehearing Denied July 19, 1963.

See also 362 S.W.2d 201.

Ungerman, Hill, Ungerman & Angrist, and W. M. Hill, Dallas, for appellant.

Crocker & McDonald, Irby & McConnico, and Milledge McConnico, Fort Worth, for appellees.

LANGDON, Justice.

This is an appeal from a summary judgment. On May 1, 1959, the appellant Altheimer & Baer, Inc., a foreign corporation created and existing under the laws of the State of Illinois, instituted this suit against Vergal Bourland Home Appliances, a Texas Corporation, and Vergal Bourland individually to collect on 33 trade acceptance notes in the total principal sum of $11,676.-28, which were accepted by appellees, and duly signed for merchandise sold and shipped to them by the appellant, the full and prompt payment of which was unconditionally guaranteed by Vergal Bourland individually. Vergal Bourland answered by general denial and adopted the Vergal Bourland Home Appliance Corporation's original answer and cross-action. Thereafter the latter was adjudicated a bankrupt and Elmo Irby was substituted as cross-plaintiff in lieu thereof. The cross-action assertedly owned by Elmo Irby was severed from ap-

pellant's action on the trade acceptance notes against the original defendants.

On January 26, 1962, the original defendants and Irby filed a motion for summary judgment contending that because the appellant, a foreign corporation, had not obtained a certificate of authority it was prohibited from maintaining its suit under the provisions of § A, Art. 8.18 of the Business Corporation Act, Vol. 3A, V.A.T.S.

On February 5, 1962, the original defendants herein filed a supplemental answer containing a plea in abatement based on the same grounds.

■ The summary judgment entered by the court on October 19, 1962, contained the following language, "that Altheimer and Baer, Inc., take nothing against the Defendants by its suit; and that said Plaintiff's suit be, and the same is hereby dismissed." Although we have concluded that the judgment of the learned trial court must be reversed on other grounds hereinafter stated, we deem it advisable to point out that a judgment denying a recovery should not be entered against a nonqualified corporation. The judgment should be one merely dismissing the suit. 14 Tex.Jur. 2d, p. 758, § 658, and cases cited therein.

Appellees filed a motion to strike the affidavit of Milton L. Altheimer on the grounds it violated Rule 166–A, Texas Rules Civil Procedure. The hearing from which this appeal was taken was had on February 8, 1962, at which time the court took the matter under advisement. On June 7, 1962, the court by a letter to the attorneys advised that he was granting appellees' motion for summary judgment and requested their attorneys to prepare an order in accordance with his pronouncement. In the letter the court indicated that the previous affidavit of Altheimer contained conclusions. The appellant thereafter requested permission to file an additional affidavit. The court granted permission and the additional affidavit was sworn to on June 19, and filed June 21, 1962. The record reflects that the court signed a certifi-

cate stating: " * * * I felt that in my discretion I could and did consider the further affidavit of Milton L. Altheimer." In a subsequent certificate the court stated: " * * * I read the Affidavit which was filed after my pronouncement of judgment and found in it no grounds for change in my decision which I had announced on June 7, 1962."

■ In our opinion the court had discretion under Rule 166–A, T.R.C.P., to permit the filing of the affidavit.

Since the record clearly shows that the court granted permission to file it and that it was read and considered by the court before the summary judgment was signed some 4 months later, we have concluded that the motion to strike the affidavit should be and same is hereby overruled.

The additional affidavit of Milton L. Altheimer will therefore be considered as a part of the record in this case as it was before the trial court and considered by it.

■ The only remaining question to be determined on this appeal is as follows: Did the indebtedness which is made the basis of this suit arise out of transactions and activities which are essentially interstate in nature or intrastate? If they were interstate the appellant may maintain its suit and if intrastate it may not.

In our opinion the evidence is not such as to warrant the trial court to find as a matter of law that the transactions involved were intrastate in nature. We find and hold that the evidence raised an issue of fact.

A review of the record reflects that the following facts are undisputed:

(1) The appellant, a foreign corporation, has not procured nor made any application for a certificate of authority from the Secretary of State of Texas.

(2) That before and during the pertinent period Mr. E. H. E. "Andy" Anderson, hereinafter referred to as Anderson, was

employed by appellant as its sales representative in Texas and surrounding states and was authorized to solicit orders for transmittal to appellant's home office in Chicago, Illinois, for acceptance. He was further authorized to make recommendations for the scheduling of advertising with regard to particular sales promotions and assist the customer in setting up displays for use at such times.

(3) The indebtedness evidenced by the thirty three (33) trade acceptance notes upon which this suit was initiated arose out of the sale of merchandise by appellant to appellees. The purchase orders were obtained by Anderson from appellees and forwarded by him to the appellant's Chicago office for acceptance. The merchandise was shipped from Chicago, Illinois, to the appellees in Fort Worth, Texas. The purchase orders for such merchandise provided for shipment FOB the shipping point and thus title to all such merchandise vested in appellees upon receipt thereof by the carrier.

(4) The prepared advertising and promotional material utilized in the sales promotions were shipped each time along with the merchandise from Chicago, Illinois, to Fort Worth, Texas, in interstate commerce.

(5) The indebtedness evidenced by the trade acceptance notes has not been paid.

It is readily apparent from the undisputed facts above recited that the indebtedness evidenced by the trade acceptance notes arose out of transactions which were essentially interstate in nature. It now becomes necessary to examine the evidence on the disputed facts concerning the activities of Anderson in handling the sales promotions to determine if the interstate character of the transactions has been altered to such an extent that as a matter of law it has been converted to one that is intrastate in nature.

The contentions of the appellees as reflected by their pleadings and supported by the affidavit of Vergal Bourland are in essence that Anderson as agent for appellant, aside from his advisory role in making recommendations and suggestions and assisting in arranging of displays and instructing the sales personnel concerning displays and special features of the merchandise, also engaged in the following additional activities:

(1) He would and did arrange with the Fort Worth Star Telegram as to the size and dates of all newspaper advertising.

(2) He would and did make all arrangements with a local concern for handling of direct mail advertising when such medium was used. That in this connection he would and did determine the number of pieces to be mailed each day and the day or days for such mailings and issued instructions to the concern to prepare and mail same.

(3) He assisted in instructing the employees of appellees to set up displays of the merchandise and recommended to them the special features of the merchandise.

(4) That Anderson suggested down payment and weekly installments in payment of the merchandise.

(5) That following each sales promotion Anderson would instruct appellees to ship any unsold merchandise to another retail store, some of which were located in Texas, and that appellees would receive credit for such unsold merchandise shipped by it.

The appellant by its pleadings supported by controverting affidavit has denied such additional activity on the part of Anderson. It further contends that if Anderson did engage in such activities he did so without authority.

■ The first two contentions of the appellees relating to Anderson's role in handling the newspaper and direct mail advertising appear to have been resolved by the opinion in Sloan v. Miami Margarine Co., Tex.Civ.App., 247 S.W.2d 169, ref., n. r. e., in which it was held that the statute is not applicable when cooperative advertising and sales promotion are merely inci-

dental to the interstate element of the transaction and essential to its completion. In the Sloan case, supra, the advertising costs were to be borne equally by plaintiff and defendant where as in this case all advertising was done in the name of and at the expense of the appellees.

The third and fourth contentions of the appellees to the effect that Anderson assisted in setting up displays and recommended special features of the merchandise and down payment and weekly installments in payment thereof were obviously calculated to promote the sale of merchandise owned by the appellees. The appellees were not obliged to abide by the suggestions or the recommendations made by Anderson or to accept his aid in setting up displays or instructing the sales personnel.

■ In examining these activities on the part of Anderson it is important to keep in mind that all of the merchandise involved was sold direct to appellees by appellant whereby it became the property of the appellees. They were free to handle the merchandise in any manner desired. The fact that Anderson as agent for the appellant thereafter assisted the appellees' salesmen in promoting the sale of such merchandise would not necessarily render it subject to the provisions of the Texas Business Corporation Act. Maury-Cole Co. v. Lockhart Grocery Co., Tex.Civ.App., 173 S.W. 262, (no writ history); see also 14 Tex.Jur.2d, pp. 705, 709 §§ 617 and 618 and cases cited therein.

In examining the fifth and final contention of the appellees concerning Anderson's participation in the disposition of the unsold merchandise it is again emphasized that the title to all such merchandise was in the appellees. As the owners thereof they were not compelled nor obligated to sell it or to ship it anywhere. As an accommodation to them however, the appellant extended to the appellees the option or privilege of shipping such unsold goods to other customers of the appellant and giving them credit on their account for goods so ship-

ped. The shipment of such goods was handled by the appellees. The benefit derived therefrom in the way of credit allowances inured to the appellees. The shipment of such goods to other customers of the appellant in the United States and Canada actually replaced merchandise which the appellant might otherwise have sold to such customers. It would appear that whether the goods were shipped by the appellees to points in Texas or elsewhere would be immaterial, as would the source of the information concerning names and locations of customers to ship to.

This conclusion would seem to be particularly appropriate since the unsold merchandise was the property of the appellees who had the option of retaining it or shipping it and receiving credit for it.

In summation it strikes us that most if not all of the activities on the part of Anderson which the appellees have complained of constituted a real effort on the part of Anderson to serve the best interests of his customers in promoting the sale of their merchandise.

The cases relied upon by the appellees involved contracts which were made and performed wholly within the state by local agents and have no application here.

In each case the transaction involved must be considered in its entirety. Whether the character of the business or transaction is interstate or intrastate must be determined from the facts of each particular case. 14 Tex.Jur.2d, pp. 705, 709, §§ 617 and 618.

■ As heretofore stated we are of the opinion that the court erred in granting the motion for summary judgment. Further we are of the opinion that unless additional facts are submitted to the court on further trial of this matter which would materially alter the interstate character of the transactions involved that the trial court could properly overrule the appellees' plea in abatement and try the case on its merits.

Reversed and remanded.