**L. W. POWELL et al., Appellants,**

v.

**FOREST OIL CORPORATION et al.,
Appellees.**

**No. 7667.**

Court of Civil Appeals of Texas.

Texarkana.

June 22, 1965.

Rehearing Denied July 13, 1965.

Fred Erisman, John M. Smith, Roberts & Smith, Longview, Gordon R. Wellborn, Henderson, for appellants.

Lee Jones, Jr., San Antonio, Chas. F. Potter of Spruiell, Lowry, Potter, Lasater & Guinn, Tyler, for appellees.

FANNING, Justice.

A venue case. Forest Oil Corporation joined by other co-owners of a "Snider" lease in Wood County, Texas, brought suit against L. W. Powell and a number of other named defendants alleging, among other things, to the effect that a deviated or "slant hole" oil well was drilled and completed in 1954 (by Powell and other defendants) which was surfaced on the "Burgin" lease of Powell and certain named defendants in Wood County, Texas, but which was bottomed under the "Snider" lease of plaintiffs, and that from August 13, 1954, to August 6th, 1962, such well surfaced on the "Burgin" lease but bottomed under plaintiffs' "Snider" lease, produced oil from plaintiffs' "Snider" lease, and constituted a conversion of plaintiffs'

oil to plaintiffs' damages in the sum of $720,994.00.

L. W. Powell and certain other defendants filed pleas of privilege to be sued in the counties of their respective residences. None of the defendants reside in Wood County, Texas, where the suit was filed. Plaintiffs controverted the pleas of privilege. The original controverting pleas were not properly sworn to but the amended controverting plea was properly sworn to. Plaintiffs contended in their amended controverting plea that venue of the suit was maintainable in Wood County, Texas, under subdivisions 9 and 7 of Art. 1995, Vernon's Ann.Civ.St. Appellants levelled certain special exceptions to the original and amended controverting pleas, which exceptions were overruled by the trial court. The trial court after hearing the evidence adduced, including certain stipulations, overruled the pleas of privileges of Powell and certain other named defendants, and appellants have appealed.

■ Plaintiffs-appellees alleged in their amended petition that defendants-appellants were mining partners. This was not denied under oath by any of the appellants. Appellants must be considered as mining partners under the record in this cause. See Rules 93 and 86, Texas Rules of Civil Procedure, and Harrington v. State, Tex.Civ. App., 385 S.W.2d 411 (1964).

The well in question and the "Snider" and "Burgin" leases were all located in Wood County, Texas.

■ As hereinafter indicated it is our view and holding that there was sufficient pleading and proof to maintain venue of this suit in Wood County, Texas, under the "trespass" portion of Art. 1995, V.A.C.S., by reason of conversion of plaintiffs' oil by appellants, and for this reason we do not discuss other contentions relied on by appellees to sustain venue in Wood County, Texas.

Section 9 of Art. 1995, V.A.C.S., reads as follows:

"9. Crime or trespass.—A suit based upon a crime, offense or trespass may be brought in the county where such crime, offense, or trespass was committed by the defendant, or by his agent or representative, or in the county where the defendant has his domicile. This subdivision shall not apply to any suit based upon negligence per se, negligence at common law or any form of negligence, active or passive."

There was ample proof that the well in question was a deviated or "slant hole" oil well which surfaced on appellants' "Burgin" lease and bottomed under appellees' "Snider" lease. The Sperry-Sun survey, properly made in 1962, showed that the well was bottomed under plaintiffs' lease at a point 1400.3 feet south 35 deg. E. 56 min. W. from the surface location. Also when the well was directionally surveyed by the Railroad Commission on August 6, 1962, the measured depth was found to be 5050 feet, which was contrary to the figure of 4874 feet given by L. W. Powell as the depth of said well in the well completion report signed by Powell, as operator. On August 8th, 1962, the pipe line connection to the well was severed. Application to plug the well was made and the well was plugged.

There was ample proof that each of the appellants signed division orders and transfer orders selling the production from the oil well in question to Humble Oil & Refining Company, and that pursuant to the terms of the division orders the oil was delivered at the stock tanks on the "Burgin" lease into the Humble Pipe Line Company, in Wood County, Texas, and the proceeds were paid to the defendants in the respective amounts assigned to their purported interests.

■ It is generally held that an unlawful conversion is a "trespass" within the meaning of Subd. 9 of the venue statute.

Thus, venue of an action for conversion may be laid in the county where the tort was committed, although the defendant has his domicile elsewhere. And in order to sustain venue in such a case, it is not necessary on the hearing of a plea of privilege to prove the fact of conversion with that degree of conclusiveness required in a trial on the merits; only a substantial controversy need be shown. See 14 Tex. Jur.2d, Conversion, Sec. 43, p. 43–45, and the numerous authorities therein cited.

Appellants contend that they did not have any knowledge that the well was a deviated or "slant hole" well. Some of the appellants acquired their interests after the well was completed and they contend that they could not have had any knowledge of the well being deviated or being a "slant hole" well. All appellants thus contend that because they had no knowledge of the well being deviated that they could not be convertors of plaintiffs' oil.

■ To constitute conversion, there must be an intent on the part of the defendant to assert some right in the property. *Wrongful intention is not essential, however; nor is it material, except as to the question of damages, that the defendant acted in good faith or under a mistaken belief as to his rights.* 14 Tex.Jur.2d, Sec. 3, p. 11.

In Harrington v. Texaco, Inc., 5th Circuit, 339 F.2d 814, a "slant hole" oil well case decided in 1964, it was stated:

"The fact that no effort was made to establish that Harrington had wilfully deviated the well is not relevant to the joint liability issue since such intent is not required to make out conversion. 14 Tex.Jur.2d Conversion § 3. * * *

"Under Texas law, these defendants were guilty of conversion of personal property,[15] and under the general rule the measure of damages is the value of the converted property, 14 Tex.Jur.2d Conversion §§ 1, 3, 9, 24—in this case, the value of the oil at the surface." (Footnote 15 of said opinion reads as follows: "In Texas, oil and gas is regarded as realty when in place but as personalty when severed. W. B. Johnson Drilling Co. v. Lacy, Tex.Civ. App. no writ history, 1960, 336 S.W.2d 230; 14 Tex.Jur.2d Conversion § 9."

In Pan American Petroleum Corporation v. Long, 5th Circuit, 340 F.2d 211 (1964), Southwestern Life Insurance Company, a mortgagor of Long, the operator of a deviated or "slant hole" oil well, was held liable for conversion of oil and gas. This was based largely upon the fact that Southwestern, though innocent of any willful or intentional wrongdoing, had signed division orders selling the production from the deviated wells, that the production had been delivered to the purchaser by Long, the operator, and the proceeds paid to Southwestern Life Insurance Company. The division orders (similar to the division orders in this case) provided that title to the oil should pass to the purchaser upon delivery into the pipeline. The Circuit Court in holding Southwestern Life liable for conversion in its opinion stated in part as follows:

"This case is another chapter in the litigation arising out of the recent slant hole oil episode in the East Texas field, this time involving two parties innocent of any purposeful wrongdoing. The question here is whether the slanted-on oil company may recover from a financial institution the proceeds of the stolen oil received by it from the purchasing pipelines in payment of loans and production payments made to or purchased from the slant-hole operator. * * * We have concluded that the Trial Court was correct in holding Southwestern Life liable for conversion to the extent of all proceeds received during the two-year period. We therefore affirm.
"* * *

"In this case, ascertainment of the applicable legal rules governing the tort of conversion presents no real difficulty, and the problem is whether under these circumstances, conversion is made out. Although the formula has been variously worded by the Courts of Texas, the fundamentals of conversion have been fairly consistently defined. In its brief SWL states a definition which apparently has garnered wide acceptance. Conversion is ' * * * the unlawful and wrongful exercise of dominion, ownership, or control by one person over the property of another, to the exclusion of the same rights by the owner, * * *.' France v. Gibson, Tex.Civ.App., 1907, 101 S.W. 536.

"From all definitions encountered the rubric seems to be some distinct act of dominion or control over the personal property of another. The convertor may either have actual or constructive possession of the property. Although the act of control or dominion must be positive and affirmative (mere nonfeasance will not do), a wrongful or fraudulent intent or purpose is not required, and the presence of good faith in the convertor is relevant only on the issue of damages. Only where the owner is seeking to recover the actual property itself rather than the value thereof, or with more particular reference to the slant hole cases, where the slanted-on owner seeks recovery from the adjoining working interest owner, who in developing and operating the lease has incurred 'cost of production' does the presence of good faith mitigate or alter the recovery."

As heretofore stated, there is ample proof in the record that the oil well in question was deviated and a "slant hole" well, surfaced on appellants' lease but bottomed under appellees' lease, that said well produced oil and gas from appellees' lease, that each of the appellants signed division orders, such oil and gas was delivered into the pipeline of the purchaser under the division orders, and payment therefor was made to appellants. All of the necessary elements of conversion are made out under the record in this case against appellants, irrespective of whether any of them had any knowledge of the deviation of the oil well in question.

The original controverting plea was defectively sworn to, upon knowledge and belief. This was corrected by the amended controverting plea which was properly sworn to with a proper jurat. The amended controverting plea also specifically states:

"Plaintiffs have filed herein their First Amended Original Petition, the allegations of which are incorporated herein as though fully set out. The allegations in said petition are true and correct."

We have examined the allegations in plaintiff's first amended original petition and find that they are sufficient to allege a trespass by conversion as against all appellants, occurring in Wood County, Texas, and that such amended petition and such amended controverting plea which adopts said amended petition sufficiently allege a trespass by conversion as against all appellants in Wood County, Texas, under the trespass portion of Subd. 9 of Art. 1995, V.A.C.S. We find no error in the verification or in the amending of the amended controverting plea, and find such plea to be sufficient with respect to alleging a trespass in Wood County, Texas, as against all appellants. In this connection see Leonard v. Maxwell, Tex.Civ.App., 356 S.W.2d 335 and Tex.Sup.Ct., 365 S.W.2d 340.

Finding that venue of this cause is sustained in Wood County, Texas, under the trespass portion of Subd. 9 of Art. 1995, V.A.C.S., the judgment of the trial court is accordingly affirmed.

Affirmed.