JAY–LOR TEXTILES, INC., Appellant,

v.

PACIFIC COMPRESS WAREHOUSE COMPANY et al., Appellees.

No. 1101.

Court of Civil Appeals of Texas, Corpus Christi.

Feb. 28, 1977.

Rehearing Denied March 21, 1977.

Jack K. Dahlberg, Jr., Guy Allison, Corpus Christi, for appellant.

Houston C. Munson, Jr., Gonzales, for appellees.

## OPINION

YOUNG, Justice.

This is an appeal from an order overruling defendant's plea in abatement and from a judgment for the plaintiffs based on an instructed verdict entered against the defendant at the close of all the evidence in a jury trial.

Pacific Compress Warehouse Company, Curtis Goedecke, Otto Goedecke, and Otto Goedecke, Inc., sued Jay-Lor Textiles, Inc., based on Jay-Lor's operation of a textile mill in Cuero, Texas, for approximately 2½ years. The reasons alleged, the amounts sought, and the awards made by the trial court are as follows:

1. Pacific sought $2,800.00 per month for its equipment used by Jay-Lor from June 1971 through October 1973 and was awarded $72,800.00.

2. Curtis Goedecke sought $6,221.33 for cotton furnished to and unpaid for by Jay-Lor and was awarded $6,221.33. He further sought $4,532.66 for interest paid on behalf of Jay-Lor and was awarded $4,532.66.

3. Otto Goedecke sought $16,310.00 under his managerial employment contract with Jay-Lor from January 20, 1971, to November 24, 1973, and was awarded $16,310.00.

4. Otto Goedecke, Inc., sought $1,878.45 for miscellaneous expenses incurred on behalf of Jay-Lor and was awarded $1,389.45.

Additionally, the plaintiffs each sought reasonable attorney's fees and were awarded $5,000.00 in a lump sum.

Appellant has brought forward 20 points of error. In its points 1 through 7 together with points 19 and 20, the appellant complains of actions of the trial court regarding Pacific.

The appellant complains in its point 1 that the trial court erred in overruling the appellant's plea in abatement. In that regard, prior to the jury trial, the appellant-defendant filed its plea in abatement asserting that appellee-Pacific was a foreign corporation without a permit to do business in the State of Texas and was thereby barred from enforcing any cause of action occurring while it had no permit. Pacific answered the plea by contending that Tex. Bus.Corp. Act Ann. art. 8.01, excluded this suit because it was based on an interstate transaction and because it was an isolated transaction completed within a period of thirty days. The trial court, after a hearing, denied appellant's plea.

As in our case, where the plaintiff's petition does not affirmatively show that the foreign corporation cannot maintain the suit, the burden is on the defendant to plead, by way of a plea in abatement, and prove facts showing the corporation cannot maintain the suit. *Continental Supply Co. v. Hoffman,* 135 Tex. 552, 144 S.W.2d 253 (Tex.Comm'n App. 1940, opinion adopted); *Ero Industries, Inc. v. Be-In Buttons Co. of Houston,* 473 S.W.2d 677 (Tex.Civ.App.— Houston [1st Dist.] 1971, no writ); 2 McDonald, Texas Civil Practice, Sec. 6.03.3 (1970).

Appellant properly plead a plea in abatement and the following is a fair summary of the facts produced at the hearing on the plea. Otto Goedecke was the only witness.

Pacific is a California corporation and has no permit to do business in Texas. The equipment involved was located in Mexia and then in Cuero, Texas. It was purchased by either Pacific or Lone Star Textiles from a North Carolina corporation. Thereafter it was shipped to Texas from North Carolina and France. It was then used by Lone Star until Walter Heller, the lien holder, foreclosed on the assets of Lone Star in 1970. At that time, Otto Goedecke, the president of Pacific, introduced Mr. Heller and Mr. Schneider, the president of Jay-Lor, for the purpose of having Jay-Lor purchase the equipment. The equipment was not purchased, but Jay-Lor did begin using it at Cuero with "an understanding that they would have to compensate". There was no written agreement as to this arrangement, nor was there a rental price ever agreed upon in any form. The main office of Pacific was always maintained in Hallettsville, Lavaca County, Texas, in the office of Otto Goedecke who was its major stockholder and its president.

■ The Texas Business Corporation Act prohibits a foreign corporation from maintaining any action until it has a certificate of authority. Article 8.18A, in part, states:

"No foreign corporation which is transacting, or has transacted, business in this State without a certificate of authority shall be permitted to maintain any action, suit, or proceeding in any court of this State (whether brought directly by the corporation or in the form of a derivative action by a shareholder) on any cause of action arising out of the transaction of business in this State, until such corporation shall have obtained a certificate of authority. . . . "

A foreign corporation which does not comply with this section is not allowed to maintain a suit until it complies with the law. *Troyan v. Snelling & Snelling, Inc.,* 524 S.W.2d 432 (Tex.Civ.App.—Dallas 1975, no writ); *Ammann v. St. Joe Paper Co.,* 341 S.W.2d 700 (Tex.Civ.App.—San Antonio 1960, no writ). Article 8.01 of the same Act excludes, however, from this requirement transactions in interstate commerce and isolated transactions completed within a thirty day period and not in the course of a number of repeated transactions of like nature.

■ We find that the evidence presented clearly shows that the transaction was only intrastate. Appellee would have us hold that the movement of the equipment from North Carolina and France made the transaction interstate. We do not agree. It is clear that this original transaction in no way was connected to Jay-Lor's dealings with Pacific. It cannot, therefore, give to the leasing arrangement an interstate flavor. *Estey Corporation v. St. Mary's University of San Antonio, Inc.,* 470 S.W.2d 138 (Tex.Civ.App.—San Antonio 1971, no writ). Appellee, also, cites various cases in support of its contention that this is an interstate transaction. We note, however, that in each of these cases there was shipment of goods between states which shipment formed the basis of the transaction. Not so here. The equipment was already in Texas before Jay-Lor had any dealings with it.

Appellee also argues that this is an isolated transaction occurring within thirty days. This is clearly not the case here where the plaintiff claims rents for a period extending several months past thirty days. Appellant's first point is sustained and it is, therefore, our duty to reverse the judgment of the trial court as to Pacific and to dismiss its cause of action. *Altheimer & Baer, Inc. v. Vergal Bourland Home Appliances,* 369 S.W.2d 478 (Tex.Civ.App.—Fort Worth 1963, writ ref'd n. r. e.); *Davis v. United Shoe Repairing Mach. Co.,* 92 S.W.2d 1107 (Tex.Civ.App.—Beaumont 1936, writ dism'd w.o.j.). Because of this ruling, we deem it unnecessary to discuss appellant's other points pertaining to Pacific other than to note that we have considered them and we sustain those points 2 through 7, 19 and 20.

In appellant's remaining points, it challenges the trial court's action in granting an instructed verdict for the remaining appellees.

■ In determining whether the trial court was correct in instructing a verdict, we must view the evidence in the light most favorable to the losing party. Thus, we

must indulge in every reasonable inference which can be properly drawn from the evidence favorable to the movant and disregard all contrary evidence. If, so viewed, the evidence has any probative force, an issue is raised and we must hold the instructed verdict improper. *White v. White,* 141 Tex. 328, 172 S.W.2d 295 (1943); *Wood v. Paulus,* 524 S.W.2d 749 (Tex.Civ.App.— Corpus Christi 1975, writ ref'd n. r. e.); 3 McDonald Texas Civil Practice, § 11.28.2 (1970).

■ Reviewing the evidence in the light most favorable to the losing party, Jay-Lor, we find the following testimony pertinent to the instructed verdict for Curtis Goedecke on his cotton claim. Francis Mikulenka, appellant's expert on cotton quality, testified that upon examination of the mix (the material used to spin the yarn), he could not tell whether it was cotton and did not really know what it was. Jimmy Koranek, formerly employed as an overseer for appellant in its mill, testified that the yarn spun from the cotton was weak. This weakness resulted in breakage of the yarn causing production to stop for repairs. He suggested that this was caused by the poor quality of the cotton used in spinning yarn. We hold that the foregoing evidence raises a fact issue whether Jay-Lor was due an off-set for the quality of cotton sold to it by Goedecke or whether the cotton was of such poor quality that Jay-Lor had no duty to pay for it. Appellant's points 8 and 9 are sustained.

About Curtis Goedecke's claim for interest paid by him because of Jay-Lor's delays of payment to him, we look to Otto Goedecke's testimony. After the original financing arrangement in Mexia collapsed, Jay-Lor arranged through a New York bank to open irrevocable letters of credit to be used in purchasing the cotton. The procedure then was that Otto Goedecke would notify Jay-Lor that cotton had been purchased and Jay-Lor then would open the letter of credit. The bank, upon the receipt of the invoice, would tender the money. Apparently, delays developed in the payment to the sellers of the cotton and a new

means of financing had to be devised to obtain a steady supply of cotton. Whereupon Otto Goedecke approached Curtis Goedecke about financing the purchase of cotton in Curtis' name through a Hallettsville bank. An agreement was worked out with the bank whereby the bank would finance 75% or 80% of the purchase price and Curtis would furnish the remainder. Jay-Lor did not enter into this agreement and never provided any financial backing for it. Jay-Lor did, however, continue to open letters of credit in New York when notified of purchases of cotton. The result was that Curtis Goedecke sustained the delay in payment for the cotton, thereby assuring Jay-Lor of a steady supply.

■ There was testimony also from Otto Goedecke that, in connection with the interest claim against Jay-Lor for late payment on letters of credit, there was no interest charged by the bank to Curtis because of those late payments. Further, Otto calculated the claimed interest several different ways. To us the foregoing raises several material fact issues: whether Jay-Lor was responsible for interest paid by Curtis; whether Curtis paid any interest; and, if Jay-Lor was obligated to Curtis for interest, what the correct amount was. Appellant's points 10, 11 and 12 are sustained.

Appellant's point 13 attacks the trial court's motion for instructed verdict for wages earned under Otto Goedecke's employment contract. Jay-Lor and Otto Goedecke entered into employment contract on January 20, 1971, binding Jay-Lor to pay Otto Goedecke $250.00 a week for managing its Cuero and Mexia operations. Contained within the contract was the following provision:

"(4a) During the term of this agreement the employee shall devote his full time and energy to this employment and shall not engage or work in any other business or employment of any nature."

■ A full review of the record reveals two instances in which Otto Goedecke violated this provision, thereby, establishing a fact question as to the justness and correctness of this account. First, he was the

actual purchaser and dealer of cotton behind Curtis Goedecke's sale of cotton to Jay-Lor; second, his admitted motivation in managing Jay-Lor's Cuero operation was to restart Lone Star Textiles, his own bankrupt operation. Appellant's point 13 is sustained.

In its point 14, appellant challenges the instructed verdict for expenses claimed by Otto Goedecke, Inc. Once again, a full review of the record leads us to conclude that a fact question was presented as to the justness of this claim. Otto Goedecke testified that he was the actual purchaser and seller of cotton for Curtis Goedecke. He further testified that phone bills and travel expenses could have been the result of this operation. Travel expenses between Cuero and Hallettsville were shown to be incorrect based upon mileage between Cuero and Hallettsville and the number of trips claimed. Freight expenses claimed were also shown to be probably the result of Otto Goedecke's personal enterprises. Appellant's point 14 is sustained.

Appellant's final points of error (15, 16, 17 and 18) complain of the trial court's instructed verdict for attorney's fees for all plaintiffs. The granting of attorney's fees is dependent on the party's proof of a "valid claim" upon which a judgment is "finally obtained". Tex.Rev.Civ.Stat.Ann. art. 2226 (1971). Article 2226, therefore, contemplates recovery of attorney's fees only if the claimant finally obtains judgment. *Cook v. Layne Texas Company, Inc.*, 495 S.W.2d 377 (Tex.Civ.App.—Waco 1973, writ ref'd n. r. e.); *Nichols v. Acers Company*, 415 S.W.2d 683 (Tex.Civ.App.—Austin 1967, writ ref'd n. r. e.). Because of our holdings, plaintiff-appellees have not obtained a judgment in this case. Appellant's final points are sustained.

The judgment of the trial court is REVERSED as to all appellees. The cause is dismissed as to Pacific and remanded for trial as to all the other appellees.