**John M. KILLIAN, Appellant,**

v.

**TRANS UNION LEASING CORPORATION, Appellee.**

No. 04–81–00362–CV.

Court of Appeals of Texas,
San Antonio.

Aug. 31, 1983.

Rehearing Denied Sept. 14, 1983.

Pepos S. Dounson, San Antonio, for appellant.

Don Erickson, Chicago, Ill., for appellee.

Before ESQUIVEL, BUTTS and TIJERINA, JJ.

## OPINION

BUTTS, Justice.

Trans Union Leasing Corporation, appellee, sued for possession or recovery of damages for conversion of a self-propelled irrigation system after John M. Killian, appellant, obtained it in a foreclosure sale of a farm. Following a bench trial, the trial court found there was conversion and awarded Trans Union the sums of $7,500.00 actual damages, $1,155.00 prejudgment interest, and $3,750.00 exemplary damages. Assigning nine points of error, Killian challenges the sufficiency of the evidence and the authority of Trans Union, a foreign corporation, to maintain the suit. We affirm the judgment as reformed.

The record shows Killian purchased at a Medina county bank's foreclosure sale the Frio county farm of Mary and R.O. Hundley in November 1978. The Hundleys had entered into a lease agreement with Trans Union in April 1975 for a Valley irrigation sprinkler system which was installed on their farm by Peerless Equipment Company. Peerless placed the purchase order with a Nebraska manufacturer and secured financing for the unit from Trans Union, a Chicago, Illinois leasing business. The Hundleys became the lessees under a ten year lease of the irrigation system, the basis of this conversion action, from the lessor, Trans Union.

It is undisputed that Trans Union had no certificate of authority to conduct business in Texas. In his first four points of error Killian challenges the trial court's finding that the foreign corporation's suit was properly brought as exceptions under two statutory provisions. The judgment recites the following exceptions in Tex.Bus. Corp.Act Ann. art. 8.01 (Vernon 1980) as applying to Trans Union:

B. Without excluding other activities which may not constitute transacting business in this state, a foreign corporation shall not be considered to be transacting business in this state, for the purposes of this Act, by reason of carrying on in this state any one (1) or more of the following activities:

\*     \*     \*     \*     \*     \*

(7) Creating evidences of debt, mortgages, or liens on real or personal property;

\*     \*     \*     \*     \*     \*

(9) Transacting any business in interstate commerce;

\*     \*     \*     \*     \*     \*

"Evidences of debt" include all contractual obligations to pay in the future for consideration presently received. *Searsy v. Commercial Trading Corp.,* 560 S.W.2d 637, 641 (Tex.1977). We hold the lease agreement entered into by the Hundleys was a contractual obligation and evidence of their indebtedness.

The lease agreement expressly provided that all payments be made at the Chicago office of the lessor. Executed by Trans Union in Chicago, it further set out, "... This Lease shall be deemed to have been made and accepted in Cook County, Illinois...." The manager of Peerless testified that no agency relationship existed between his company and Trans Union; rather Peerless secured financing arrangements not only with Trans Union but also with other leasing companies as an accommodation to their customers. We agree with the trial court's finding, recited in the judgment, that Trans Union transacted business in interstate commerce, not intrastate.

When the petition of a foreign corporation does not affirmatively disclose it is a foreign corporation which cannot maintain a suit in Texas, the defendant must assume the burden of pleading and proving facts to show the corporation cannot maintain the suit. *Continental Supply Co. v. Hoffman,* 135 Tex. 552, 144 S.W.2d 253, 255 (1940); *Jay-Lor Textiles v. Pacific Compress Warehouse Co.,* 547 S.W.2d 738, 740 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.). No permit or certificate of authority is required for a foreign corporation to transact interstate business. *Continental Supply Co. v. Hoffman,* at 255. Therefore, Trans Union is not barred from maintaining this suit by reason of article 8.18, as Killian contends. The article provides in part:

A. No foreign corporation which is transacting, or has transacted, business in this State without a certificate of authority shall be permitted to maintain any action, suit, or proceeding in any court of this State ... on any cause of action arising out of the transaction of business in this State, until such corporation shall have obtained a certificate of authority....

Since there is no evidence to show Trans Union conducted an intrastate transaction, the burden of proving facts to show the foreign corporation cannot maintain this suit has not been sustained. *See Squyres Construction Co., Inc. v. Chemical Bank,* 596 S.W.2d 283 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ). We overrule points of error one through four.

In points of error five, six and seven, Killian challenges the sufficiency of the evidence to prove conversion, to prove the value of the property, and to prove the conversion, if any, was willful and malicious. He says also the three findings are against the great weight and preponderance of the evidence. In reviewing a factual insufficiency point the reviewing court will consider all of the evidence in the record that is relevant to the fact being challenged. *See generally, In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951). A great weight point requires a review of all of the evidence. *Id.* When the challenged fact is one on which the complaining party has the burden, it is properly a great weight point. 4 R. McDONALD, TEXAS CIVIL PRACTICE § 18.14 (1971). In all non-jury trials, where no findings of fact or conclusions of law are filed or requested it will be implied that the trial judge made all the necessary findings to support its judgment. *Burnett v. Motyka,* 610 S.W.2d 735, 736 (Tex.1980).

Conversion is the wrongful exercise of dominion and control by one person over the property of another. *Waisath v. Lack's Stores, Inc.,* 474 S.W.2d 444, 446 (Tex.1971); *Groves v. Hanks,* 546 S.W.2d 638, 647 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). Conversion may be direct or constructive; it is concerned with possession, not title; it is complete when a person unlawfully and wrongfully exercises dominion and control over the property of another to the exclusion of the right of possession of the owner or of the person entitled to possession of the property involved. *McVea v. Verkins,* 587 S.W.2d 526, 530–31 (Tex.Civ.App.—Corpus Christi 1979, no writ). It is the act of conversion itself that gives a right of action and not the intention to convert. *Id.* at 531. Thus wrongful intent to convert another's property is not an essential element of conversion, nor is it material to any issue involved in a conversion suit except the issue of exemplary damages. *Powell v. Forest Oil Corporation,* 392 S.W.2d 549, 552 (Tex.Civ. App.—Texarkana 1965, no writ).

Trans Union sued the Hundleys on November 27, 1978, for rental due under the ten year lease. The Hundleys had, in the meantime, defaulted in their payments on the farm, and the trustee's foreclosure sale resulted. Killian purchased the farm at that sale and some of the property on it. Trans Union had filed their evidence of debt in the county of the Hundley's residence, which was Medina County. The bank which foreclosed on the farm was a Medina County bank. The farm was locat-

ed in the near county of Frio. Killian testified there were two irrigation systems on the farm, and he thought they both were included in the sale. After he was notified on March 1, 1979, of the claim by Trans Union, Killian testified he placed the disputed unit in storage until the legal owner could be ascertained. Trans Union filed this suit on November 19, 1979. The Medina bank had financed the first irrigation system for the Hundleys in 1973, secured by a chattel mortgage. It is undisputed that Killian obtained that system at the sale.

■ We find there is sufficient evidence to support the finding of conversion by the trial court. Trans Union made a demand for the property but was refused by Killian. *See Sunray Enterprises, Inc. v. Rosenaur,* 335 S.W.2d 670 (Tex.Civ.App.—Dallas 1960, writ ref'd n.r.e.). By storing the unit, he committed an act of wrongful dominion over the property.

The lease agreement shows the irrigation unit with fixtures and insurance was valued at $18,144.86 at the time of purchase in April 1975. The vice-president of the San Antonio office of Peerless testified the fair market value of the unit, based on his field reports, to be about fifty percent of the original price. Another witness testified that in its condition, unused and rusted in places, it was worth much less, about $2,000.00.

■ The reviewing court may not pass upon the credibility of witnesses or the weight to be given their testimony, nor may it interfere with the fact finder's resolution of conflicts in the evidence. *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792, 796 (1951). Nor may we substitute our conclusions for those of the trier of fact. *Riley v. Crossley,* 383 S.W.2d 427, 428 (Tex.Civ.App. —Houston 1964, no writ). We hold the trial court had before it sufficient evidence upon which to base its conclusion that the irrigation system was worth $7,500.00 on March 1, 1979. Further, we are unable to say, in light of all of the evidence, that the findings of the trial court are against the great weight and preponderance of the evi-

dence as to be manifestly unjust. Points of error five and six are overruled.

■ We agree with Killian when he argues that his acts of conversion, if any, were not committed willfully and maliciously. In *Ogle v. Craig,* 464 S.W.2d 95, 97 (Tex.1971), the rule to determine whether exemplary damages may be recovered is stated:

> The fact that an act is unlawful is not of itself ground for an award of exemplary or punitive damages. The act complained of not only must be unlawful but also must partake of a wanton and malicious nature, or, as sometimes stated, somewhat of a criminal or wanton nature, and an act will not be deemed malicious, and so warranting punitive damages, merely because it is unlawful or wrongful.

*See Atlas Chemical Industries, Inc. v. M.P. Anderson,* 524 S.W.2d 681, 687–88 (Tex. 1975). There is nothing in the evidence before us to indicate any act by Killian to be wanton or malicious in nature. We accordingly sustain the seventh point of error.

■ Killian argues in his eighth point of error he was a purchaser in good faith, for valuable consideration, and without notice. We do not find this argument persuasive. Because the Hundleys never had title to the property, even if Killian had purchased their "right," he would have a lessee's right, and not legal title. Moreover, since the foreclosing bank did not acquire title to the property, the purchaser at the foreclosure sale, Killian, could not acquire title. The point of error is overruled.

We concur with the final argument that the correct figure for prejudgment interest was not entered and that the correct amount should be in the sum of $1,075.07, which is six percent interest per annum on the value of the property, $7,500.00, for the period from March 1, 1979 to July 21, 1981.

The judgment is reformed to eliminate exemplary damages. It is further reformed to reflect prejudgment interest in the sum of $1,075.07. As reformed, the judgment is affirmed. Costs will be assessed one-half

against Trans Union and one-half against Killian.

TIJERINA, Justice, dissenting.

I respectfully dissent.

The principal issue raised by appellant in points of error one through four revolves around the question of whether the foreign corporation, without a permit to do business in Texas, was transacting intrastate or interstate business and creating evidence of debt to qualify under the exceptions to Tex. Bus.Corp.Act Ann. art. 8.01, B(7) and (9) (Vernon 1980). Article 8.01, *supra,* provides in pertinent part:

> No foreign corporation shall have the right to transact business in this State until it shall have procured a certificate of authority to do so from the Secretary of State . . . a foreign corporation shall not be considered to be transacting business in this state, for the purposes of this Act, by reason of carrying on in this state any one (1) or more of the following activities:
>
>     \*    \*    \*    \*    \*    \*
>
> (7) Creating evidence of debt, mortgages, or liens on real or personal property;
>
>     \*    \*    \*    \*    \*    \*
>
> (9) Transacting any business in interstate commerce.

The appellee in this case did not file a brief. Consequently, all statements made in appellant's brief as to the facts, the evidence or the record should be accepted as correct. Tex.R.Civ.P. 419 *See also Pathfinder Personnel Service, Inc. v. Worsham,* 619 S.W.2d 475 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ).

My primary reference is *Eli Lilly & Co. v. Sav-On-Drugs, Inc.,* 366 U.S. 276, 81 S.Ct. 1316, 6 L.Ed.2d 288 (1961), wherein the United States Supreme Court addressed a similar question. The Court noted that a state cannot require a foreign corporation to obtain a certificate of authority to do business in the state if the participation of the corporation in its trade is limited to its wholly interstate sales to state wholesalers, but can require it to obtain such certificate if it is engaged in intrastate as well as interstate aspects of its trade. *Id.* at 291–92, 81 S.Ct. at 1325–26. In *Helicopteros Nacionales de Columbia v. Hall,* 616 S.W.2d 247 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ), a foreign corporation appealed from an order overruling its special appearance in a wrongful death action which occurred in Peru. Service was had on the foreign corporation under the "long arm" statute, Tex.Rev.Civ.Stat.Ann. art. 2031b (Vernon 1964). The appellate court dismissed for lack of jurisdiction because it was not shown that the foreign corporation had sufficient minimum contacts with Texas, and cited as one of the reasons for its conclusion that there was no indication that "Helicol" intended to make a profit from any business deal undertaken in Texas.

The facts in this case are distinguishable from *Estey Corp. v. St. Mary's University of San Antonio, Inc.,* 470 S.W.2d 138 (Tex. Civ.App.—San Antonio 1971, no writ), where the foreign corporation contracted directly with St. Mary's to furnish them steel book cases. This Court held that the requirement that the foreign corporation install the book cases and obtain the wood-end panels from a materialman in Texas did not change the character of the sale from an interstate to an intrastate transaction.

A foreign corporation which is transacting or has transacted business in this State without a certificate of authority is not permitted to maintain any action, suit or proceedings in any court of this State. Tex. Bus.Corp.Act.Ann. art. 8.18 (Vernon 1980). It is important to recognize that "transacting business" as used in the context of article 8.18, *supra,* means a substantial intrastate connection with this State on more than an isolated basis. *See* 20 R. HAMILTON, BUSINESS ORGANIZATIONS, § 987 (Texas Practice 1973). The undisputed evidence in this record shows that appellee was conducting intrastate as well as interstate business in Texas without a certificate of authority as required by articles 8.01 and 8.18, *supra.*

The record reflects that Peerless, as the agent or representative of Trans Union, performed duties relating to business transactions of the principal as follows: (1) assisted the customer in preparing the application and financial and credit reports, *all on forms provided by Trans Union;* (2) as part of the leasing agreement, Peerless was required to install the equipment and the installation required five days work; (3) Peerless, as a prerequisite to the leasing agreement, obtained the customer's signature to an "acceptance acknowledgment of the unit"; (4) Peerless, having paid dealers cost for the unit, was reimbursed by Trans Union in an amount that covered the profit and all other costs and expenses; (5) Peerless, pursuant to instruction from the principal, placed Trans Union stickers on the equipment; (6) Peerless, pursuant to instructions from Trans Union, gave a year warranty on the unit; (7) Peerless, on instructions from Trans Union, serviced the equipment's malfunctions; and (8) *the lease was executed in Texas.* As a general rule, an agent or representative must have duties and obligations relating to commercial or business transactions having something to do with the affairs of the corporation. *See Rouse v. Shell Oil Co.,* 577 S.W.2d 787 (Tex. Civ.App.—Corpus Christi 1979, writ dism'd w.o.j.). It is apparent from the facts indicated in this record that Trans Union was engaged in intrastate aspects of the business of financing the purchase of irrigation equipment through the participation of Peerless as its agent and representative. Trans Union is not a manufacturer selling its goods in Texas through dealers or wholesalers, which is recognized as a valid activity in interstate commerce. The proven facts clearly establish that Trans Union was purposefully well organized to transact intrastate financing business providing its agents or representatives with forms and detailed instructions.

The finding by the court that appellee was creating evidence of debt under the exception provided by article 8.01, B(7), *supra,* is necessarily related to the finding of an interstate business transaction. In *Squyres Construction Co., Inc. v. Chemical Bank,* 596 S.W.2d 283 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ), the court first found that the transaction in question was not an intrastate transaction, stating:

> The lease agreement provides that the agreement 'shall be deemed to have been made in New York;' the rental payments were payable to appellee in New York; and the lease agreement negated any duty by appellee to perform any act in Texas concerning the backhoe. *There is no evidence of where Advanced executed the lease, so we cannot assume that it was executed in Texas.* [Emphasis added.]

*Id.* at 284.

Therefore, Trans Union, as a foreign corporation without a certificate of authority to do business in Texas, could not file suit in Texas to collect the debt occasioned by the default in the lease payment. We note additionally that *the lawsuit in question was not for collection of the debt* but for possession or conversion of the equipment. Points of error one through four should be sustained.

Points of error numbers five through eight concern appellant's contention that there was insufficient evidence to support the findings that appellant converted the property; the value of the property; that the conversion was willful and malicious; that appellant had superior title to the equipment. Appellant also claims that such findings are against the great weight and preponderance of the evidence. The question on the insufficiency of the evidence requires that we consider and weigh all the evidence in the case and set aside the judgment and remand the cause for a new trial if we conclude that the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust. *See In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951). Appellee has not filed a brief, so we should accept the facts from appellant's brief as true. Tex.R. Civ.P. 419. The record indicates that title to the irrigation equipment was never conveyed or transferred to Trans Union; the Hundleys did not sign a security agree-

ment; there was no financing statement filed with the Secretary of State designating Trans Union as the secured party, nor was a financing statement filed in Frio County where the realty and equipment in question were located. Further, appellee had difficulty in identifying the equipment it claimed was converted.

An absolute refusal to transfer possession of property to one entitled thereto has been held to constitute a conversion; however, a qualified refusal based upon a reasonable qualification or requirement does not constitute a conversion per se, provided that such refusal is made in good faith. The refusal must have a legal foundation or rest on reasonable doubt as to the claimant's right or the possessor's duty under the circumstances. *Earthman's, Inc. v. Earthman,* 526 S.W.2d 192, 204 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ). The undisputed evidence establishes that appellant purchased the irrigation equipment at a foreclosure sale from the Medina Valley State Bank and in *good faith placed the equipment in storage until a legal determination as to ownership was established.* Having reviewed the entire record, I would conclude that the evidence is clearly insufficient to support the trial court's judgment that appellant converted the property; that the value of the equipment was $7,500.00; that the conversion was wilful and malicious and that appellee had superior title.

The judgment should be reversed and a take-nothing judgment should be rendered against appellee.