KIRBY EXPLORATION COMPANY, Appellant,

v.

MITCHELL ENERGY CORPORATION, Appellee.

No. 01–85–708–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 21, 1985.

Rehearing Denied Jan. 16, 1986.

---

Jim L. Flegle, Laura B. Herring, Bracewell & Patterson, Houston, for appellant.

Ralph K. Harrison, George W. Lederer, Jr., Mitchell Energy Corp., Woodlands, for appellee.

Before WARREN, DUNN and SAM BASS, JJ.

## OPINION

DUNN, Justice.

Suit was instituted by Mitchell Energy Corporation ("Mitchell") against Kirby Exploration Company ("Kirby") for conversion of oilfield pipe. The trial court found that there were no genuine issues of material fact as to the following, and granted summary judgment for Mitchell. *See* Tex. R.Civ.P. 166–A(c).

1. On March 1, 1982, and at all times relevant hereto, Mitchell Energy Corporation was the owner of 151 joints of 9-⅝ ″ 53.5 lb. P–110 LT & C Kawasaki seamless casing (the pipe) stored at Port Pipe Terminal, Inc., Harris County, Texas.

2. On March 1, 1982, Kirby took possession of the pipe, without the knowledge or consent of Mitchell and exercised dominion, ownership and control over the pipe, to the exclusion of the exercise of the same rights by Mitchell.

3. On April 5, 1982, written demand was made upon Kirby to return the pipe to Port Pipe Terminal and to Mitchell. Kirby responded in writing on April 16, 1982, refusing to return the pipe and by asserting, without qualification, its ownership of the pipe.

4. The fair market value of the pipe in Harris County, Texas, on the date of the conversion of the pipe by Kirby, was $344,022.80.

The trial court also found that Kirby failed to establish the elements of its affirmative defenses of estoppel, negligence, and negligent entrustment, and further found that Kirby failed to show that it had title to the pipe sufficient to defeat Mitchell's motion for summary judgment.

In three points of error, Kirby contends that the trial court erred in granting summary judgment for Mitchell because genuine issues exist as to the following material facts:

1) The ownership of the pipe purchased by Kirby;

2) The identity of the pipe; and

3) Whether written demand was made on Kirby for the pipe.

Kirby fails to direct our attention to specific facts in the record that refute the findings of the trial court. Kirby contends that this is "not the kind of case to which the summary judgment procedure should be applied," because the pipe travelled through the hands of several parties that were involved in the buying and selling of oilfield pipe. For this proposition, Kirby invites comparison with *Valley Stockyards Co. v. Kinsel*, 369 S.W.2d 19 (Tex.1963), in which the supreme court reversed and remanded a summary judgment procedure in a conversion case. In *Valley*, the controlling question was whether or not at the time Kinsel delivered 158 head of cattle to another cattle trader, he *intended* that title should pass. *Id.* at 20. The *Valley* court held that this question of whether the sale was conditional or absolute was a genuine issue of material fact and should not have been decided by summary judgment. *Id.* at 24.

■ *Valley* is distinguishable from the present dispute. In the typical conversion case, intent is not material to any issue involved except that of exemplary damages. *Killian v. Trans Union Leasing Corp.*, 657 S.W.2d 189, 192 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). The act of conversion is complete when a party unlawfully and wrongfully exercises dominion and control over the property of another to the exclusion of the right of possession of the owner or of the party entitled to possession of the property involved. *Id.*

The record shows that on August 12, 1981, the supervisor of purchasing and storage for Mitchell and its affiliate, Oilworld Supply Company ("Oilworld"), ordered 6700 feet of 9⅝" 53.5 lb. P–110 LT & C Kawasaki seamless casing. Purchase order no. 81–10–12033 was assigned to the pipe, and certificates of inspection showing the heat identification numbers of the pipe were received by Mitchell's supervisor in December of 1981.[1] Oilworld operates as Mitchell's purchasing arm and is a stocking distributor of Kawasaki tubular products.

Upon notification of the arrival of the pipe at the Port of Houston in January of 1982, Mitchell's supervisor instructed Audas-Martin Port Trucking, Inc., to transport the pipe to Port Pipe Terminal, a storage yard in Harris County. In February of 1982, Mitchell's supervisor received an invoice and five bills of lading from Audas-Martin for their hauling of 159 joints of the above-specified pipe. The invoice refer-

---

1. The purchase order number is customarily stencilled onto each joint of pipe at the mill, in order to identify the pipe during shipment, unloading, and storage. Each joint of pipe produced by Kawasaki Steel Corporation is marked with a number identifying the particular unit of melted steel from which it was produced. This number is commonly referred to as the "heat number."

enced purchase order no. 81-10-12033. Port Pipe Terminal sent Mitchell's supervisor a "materials received" report indicating that 159 joints of this particular pipe had been stored on rack J105 in their facility. Mitchell paid the invoice for the 159 joints of pipe in February of 1982.

Also in February of 1982, Kirby contracted with Petroleum Tubulars, Inc. ("PTI") for the purchase of approximately 11,000 feet of 9⅝" 53.5 # P-110 LT & C pipe. The record also shows that PTI sent Kirby an invoice requesting payment for 6,500 feet, or 151 joints, of 9⅝" 53.5 # P-110 LT & C Kawasaki pipe. The remainder of Kirby's order was filled by Sumitomo pipe, and the invoice was paid on March 8, 1982.

On March 9, 1982, Port Pipe Terminal was unable to locate certain pipe belonging to Mitchell. Following an inventory by Mitchell and Oilworld personnel, it was found that 151 joints of 9⅝" 53.5 lb. LT & C Kawasaki seamless casing, plus other sizes and grades of pipe, were missing from Mitchell and Oilworld stock. The Special Crimes Division of the Houston Police Department was contacted by Mitchell's supervisor, and an investigation ensued. Subsequently, it was discovered that a Cayman Island Company named Pharoah, Ltd. had been selling pipe from Port Pipe Terminal without the knowledge or consent of the owners, and indictments against a former vice-president and inventory manager of Port Pipe Terminal for felony theft were issued.

On March 24, 1982, Oilworld employees Hawkins and Zinn investigated a report that missing Oilworld pipe had been stored at the Gator Hawk Pipe Plantation. At Gator Hawk, Hawkins found 151 joints of 9⅝" 53.5 lb. Kawasaki pipe, mixed in with other pipe. He examined each joint of Kawasaki pipe and observed the numbers 81-10-12033 stencilled in white paint on each one. Hawkins also compared the "heat numbers" on the pipe with those shown on the Kawasaki inspection certificates and found them to be the same. Photographs taken by Hawkins at Gator Hawk clearly show the Mitchell purchase order number and the identifying Kawasaki "heat numbers," as well as a number referencing a Kirby purchase order.

Uncontested evidence shows that Oilworld, acting for Mitchell, ordered and paid for the pipe, and at no time authorized or consented to its sale or transfer. The identity of the pipe is likewise uncontested, and we reject Kirby's assertion that the pipe constituted "fungible goods." The 151 joints of pipe found at Gator Hawk Plantation were stencilled with the same purchase number and "heat numbers" as the 151 joints of Oilworld pipe missing from Port Pipe Terminal. The fact that stencilling on the pipe showed a number referencing a Kirby purchase order negates Kirby's contention that no direct testimony identified the pipe as that purchased by Kirby from PTI.

Kirby argues that the Port Pipe Terminal inventory card that shows the pipe to have been stored on rack I-103B, rather than on rack J-105, as indicated on the materials received report, raises a genuine issue of material fact as to the pipe's identity. This minor discrepancy, when viewed in light of the other evidence of the pipe's identity, does not raise a genuine issue of fact sufficient to preclude summary judgment for conversion.

■ We hold Kirby's contentions that genuine issues of material fact exist as to the ownership and identity of the pipe to be without merit.

Kirby's assertion that there is a genuine issue of fact as to whether written demand for the pipe was made is unsupported by the record. By letter dated April 5, 1982, the president of Port Pipe Terminal requested Kirby to release the 151 joints of pipe to Oilworld. The letter informed Kirby that the pipe had been positively identified as Oilworld pipe, that Port Pipe Terminal had been experiencing theft of a considerable amount of pipe from its yard, and that the Federal Bureau of Investigation had determined that the 151 joints of pipe in Kirby's possession had been stolen from Port Pipe Terminal.

■ Kirby admits that this letter was received before the pipe was transported to Oklahoma, at Kirby's request, on April 16, 1982. On that day, an attorney for Kirby responded to Port Pipe Terminal's letter, stating that Kirby had clear title to the pipe as a good faith purchaser from PTI and that disposition of the pipe had already been made. We find that Kirby fails to raise any genuine issue as to whether written demand was made for the pipe.

In a summary judgment procedure, the evidence must be viewed in the light most favorable to the party against whom judgment was rendered. *Valley,* 369 S.W.2d at 20. However, the statements and circumstances of this case, as described above, are subject to the single reasonable interpretation that Kirby unlawfully and wrongfully exercised dominion and control over Mitchell's property to the exclusion of Mitchell's right of possession. *See Killian,* 657 S.W.2d at 192. Kirby's first three points of error are overruled.

In its fourth, fifth, and sixth points of error, Kirby asserts that the trial court erred in granting the summary judgment for Mitchell because there are genuine issues of material facts regarding Kirby's affirmative defenses of equitable estoppel, statutory estoppel, entrustment, and negligent entrustment.

■ In order to show a disputed fact issue that will preclude the rendition of summary judgment for the plaintiff, the defendant must offer summary judgment proof on each element of at least one of the affirmative defenses it has pleaded. The mere pleading of an affirmative defense will not prevent the rendition of summary judgment for a plaintiff who has established conclusively the absence of disputed fact issues in his claim for relief. *Clark v. Dedina,* 658 S.W.2d 293, 296 (Tex.App.—Houston [1st Dist.] 1983, no writ).

■ Kirby's mere recitation that Mitchell granted custody of the pipe to Oilworld as bailee, and that Port Pipe Terminal was in the business of selling pipe, is not sufficient to raise the affirmative defenses of equitable or statutory estoppel. The record fails to reveal any manner in which Port Pipe Terminal was clothed by Mitchell or Oilworld with an indicium of title to the pipe. *Seigal v. Warrick,* 214 S.W.2d 883, 884 (Tex.Civ.App.—Amarillo 1948, writ ref'd n.r.e.). "Our courts have held that the owner of personal property will not be estopped by merely entrusting his possessions to another. Possession or control of property is not of itself sufficient for this purpose." *Id.*

The evidence before us shows that Oilworld operated as the purchasing and storage arm of Mitchell, and also acted as a distributor of Kawasaki tubular products. There is no showing that Oilworld ever consented to or authorized the sale or transfer of the pipe. No genuine issue of material fact is raised as to statutory estoppel under Tex.Bus. & Com.Code Ann. sec. 2.403(b) (Vernon 1968), because there is no evidence in support of Kirby's bare allegation that there was an entrustment by either Oilworld or Mitchell to a merchant dealing in oilfield pipe. The record reveals that Port Pipe Terminal's main business was the storage of oilfield pipe, and that it would only occasionally sell pipe that had been previously determined not to belong to those storing pipe at its storage yard.

Kirby's assertion that Mitchell's alleged negligent entrustment of the pipe to Port Pipe Terminal is an affirmative defense to a cause of action for conversion is meritless. As stated in *Ligon v. E.F. Hutton & Co.,* 428 S.W.2d 434 (Tex.Civ.App.—Dallas 1968, writ ref'd n.r.e.):

> This is not a suit involving negligence. It is a conversion suit, and in such a case it is no defense that the defendant was not negligent, or that the plaintiff was negligent, or that the defendant acquired the plaintiff's property through the plaintiff's unilateral mistake, or that the defendant acted in complete innocence and perfect good faith. This has been the rule in Texas at least since 1884, when *Sandford v. Wilson,* 2 Willson Civ. Cases 188, was decided.

*Id.* at 438.

Kirby's fourth, fifth, and sixth points of error are overruled.

In its seventh point of error, Kirby contends that the trial court erred in denying Kirby's motion for new trial based on newly discovered evidence.

The granting or denial of a motion for new trial rests largely within the sound discretion of the trial court, and its action should not be disturbed on appeal except for manifest abuse of that discretion. *Neunhoffer v. State,* 440 S.W.2d 395, 397 (Tex.Civ.App.—San Antonio 1969, writ ref'd n.r.e.).

■ The "new evidence" consists of the depositions of the two former employees of Port Pipe Terminal who are presently under indictment for felony theft of oilfield pipe. An abridged version of this deposition testimony was filed with this Court, and no genuine issues of material fact are presented therein. In response to a question concerning the authority of various entities to sell oilfield pipe, both deponents assert their fifth amendment privilege.

Kirby's seventh point of error is overruled.

Kirby's eighth point of error avers that the trial court abused its discretion in severing Mitchell's claims against Kirby from the original action and from Kirby's counterclaims and cross-claims, because Mitchell's claim arises out of and turns upon the same facts.

■ The rule that any claim against a party may be severed and proceeded with separately refers to a claim that is a severable part of a controversy involving more than one cause of action. *McGuire v. Commercial Union Insurance Co.,* 431 S.W.2d 347, 351 (Tex.1968); Tex.R.Civ.P. 41. As Kirby frequently points out, several entities are involved in this litigation, and different causes of action may be brought among them. Although the same facts are applicable to much of the original controversy, the causes of action are not so intertwined as to involve identical facts and issues. *See Straughan v. Houston Citizens Bank & Trust Co.,* 580 S.W.2d 29, 33 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ).

Kirby's eighth point of error is overruled.

Kirby's final point of error asserts that the cost of the supersedeas bond, if any, should be taxed against Mitchell and Oilworld as a cost of appeal.

Kirby cites no precedent for the proposition that the winning party should pay the cost of protecting the losing party from execution of the judgment and instead, relies on an alleged agreement between itself and Mitchell that does not appear in the record of this cause.

Kirby's final point of error is overruled.

The judgment of the trial court is affirmed.

Judgment rendered and opinion delivered November 21, 1985.