Louis B. **HUGHES**, M. D., Appellant,

v.

Douglas **AYCOCK**, M. D., et al., Appellees.

No. A2224.

Court of Civil Appeals of Texas, Houston (14th Dist.).

April 9, 1980.

Rehearing Denied April 30, 1980.

Robert P. Post, Baytown, for appellant.

Tom Alexander, Butler, Binion, Rice, Cook & Knapp, Fred Sullins, Mike Johnston, Sullins & Johnston, Houston, for appellees.

Before BROWN, C. J., and MILLER and PAUL PRESSLER, JJ.

PAUL PRESSLER, Justice.

This is an appeal from the forced retirement of appellant from a partnership. In 1971 appellant and P. T. Eichelberger, plaintiffs below, initiated a joint venture to acquire real estate in northwest Houston and construct and operate a hospital and medical clinic thereon. By August 1971, several individuals had executed instruments creating two general partnerships and one corporation. The first partnership, Houston North Properties, consisted of fifteen individuals at that time and was formed to acquire a 57-acre tract. That partnership is not involved in this appeal. The second partnership, North Houston Hospital Properties, one of the appellees in this appeal, consisted at that time of the same individuals with one exception. This second partnership (hereafter referred to as "the partnership") purchased eleven acres from North Houston Properties for the construction of a hospital and medical clinic. A corporation was formed to operate the hospital. It is not a party to this action.

By the end of 1973, the hospital and clinic were constructed and opened. In February of 1974, a partnership meeting was held to discuss the failure of plaintiffs to move a substantial portion of their practice to the new facilities. Appellees contended that all of the partners were obligated to do so under Section 8.9 of the partnership agreement which reads in part as follows:

> For the purpose of this partnership agreement, the word "retirement" shall be defined as a situation where:
>
> .   .   .   .   .
>
> (b) .  .  .   Partners   .  .  . remove their offices from the clinic which is a part of the Houston North Hospital complex and/or fail to use the Hospital itself for the treatment of their patients.  .  .  .

No action was taken as a result of this meeting.

Subsequently, the partnership encountered severe financial difficulties requiring the recruiting of eight new partners, each of whom invested $25,000.00 in return for a 1% ownership interest.

Plaintiffs continued to participate in the partnership as before. In August of 1974, a revised agreement was prepared to provide for the additional partners. It was not fully executed. Consequently, in March 1975, a second revised agreement was prepared. It expressly provided that the new partners would not assume the existing liabilities of the partnership and would neither

be required to practice "substantially full time" at the clinic nor "substantially use" the hospital. This amended agreement was never signed by the plaintiffs.

On June 12, 1975, the partnership advised Hughes and Eichelberger in writing that they had been retired pursuant to Section 8.9(b) of the original partnership agreement. With this notice the partnership tendered an amount which it believed represented the fair market value of the partnership interests owned by plaintiffs. On June 20, 1975, plaintiffs rejected in writing their alleged retirement and the consideration therefor. The plaintiffs continued to receive their share of the profits and losses until January 1, 1976.

The cause was tried to a jury which made the following findings to the following Special Issues pertinent to this appeal:

### No. 1

Do you find from a preponderance of the evidence that by entering into the Partnership Agreement the original partners mutually intended that any doctor or dentist partner who failed to substantially maintain his full-time medical practice at the clinic or near the Hospital within a reasonable time after it opened would be subject to retirement under Section 8.9(b) of the Partnership Agreement?

Answer: <u>They did so intend.</u>

### No. 2

Do you find from a preponderance of the evidence that by entering into the Partnership Agreement the original partners mutually intended that any doctor or dentist partner who failed to substantially use the Hospital itself for the treatment of his patients within a reasonable time after it opened would be subject to retirement under Section 8.9(b) of the Partnership Agreement?

Answer: <u>They did so intend.</u>

### No. 3

Do you find from a preponderance of the evidence that as of June 12, 1975 P. T. Eichelberger or Louis B. Hughes had failed to substantially use the Hospital itself for the treatment of their patients within a reasonable time after the Hospital opened?

Answer as to: P. T. Eichelberger

Answer: <u>He had failed to substantially use the hospital.</u>

Answer as to: Louis B. Hughes

Answer: <u>He had failed to substantially use the hospital.</u>

### No. 4

Do you find from a preponderance of the evidence that as of June 12, 1975, P. T. Eichelberger or Louis B. Hughes had failed to substantially maintain a full-time medical practice at the clinic or near the hospital within a reasonable time after the hospital opened?

Answer as to: P. T. Eichelberger

Answer: <u>He had failed to substantially maintain a full-time medical practice.</u>

Answer as to: Louis B. Hughes

Answer: <u>He had failed to substantially maintain a full-time medical practice.</u>

### No. 5

Do you find from a preponderance of the evidence that a fifty-one (51%) percent or greater majority of the ownership of the Partnership determined a method or methods of determining the fair market value of the Partnership interests of P. T. Eichelberger and Louis B. Hughes?

Answer: <u>They did not determine a method or methods.</u>

### No. 13

Do you find from a preponderance of the evidence that Plaintiff Hughes stated to the original partner Defendants that he would move his full-time medical practice to the Houston North Hospital Complex within a reasonable length of time after it became possible to do so, and that he would use the hospital for his patients requiring hospital care whenever it was reasonably possible and convenient to the patient to do so?

Answer: <u>We do.</u>

## No. 14

Do you find from a preponderance of the evidence that Plaintiff Hughes did not move his full-time medical practice to Houston North Hospital Complex within a reasonable time after it became possible to do so and thereafter use the hospital for his patients requiring hospital care whenever it was reasonably possible and convenient to the patient to do so?

Answer: <u>We do.</u>

## No. 15

Do you find from a preponderance of the evidence that Plaintiff Hughes made such statement, if any, for the purpose of inducing the original partner Defendants to enter into the partnership in question with said Plaintiff?

Answer: <u>We do not.</u>

## No. 18

What do you find from a preponderance of the evidence to be the fair market value of the 6.818% interest of Plaintiff Philip T. Eichelberger and the fair market value of the 6.818% interest of Louis B. Hughes in Houston North Hospital Properties partnership on June 12, 1975.

Answer: <u>The fair market value of the interest of Philip T. Eichelberger was $438,000.00.</u>
<u>The fair market value of the interest of Louis B. Hughes was $438,000.00.</u>

## No. 20

Do you find from a preponderance of the evidence that the conduct of the Defendant partners from the completion of the hospital until June of 1975 constituted a permanent waiver of their right, if any they had, to subject Louis B. Hughes to retirement under Section 8.9(b) of the partnership agreement?

Answer: <u>We do not.</u>

## No. 21

Do you find from a preponderance of the evidence that by reason of the conduct of the original Defendant partners from the construction of the hospital until June of 1975 Defendants are estopped to assert their right if any they had that Hughes is in a situation of retirement under Section 8.9(b) of the partnership agreement?

Answer: <u>We do.</u>

The court also submitted the following definition of estoppel:

The effect of the voluntary conduct of a person whereby he is precluded from asserting rights against another person relying on such conduct. Estoppel is where a person, by his acts, representations, admissions, failure to act, or by his silence, when it is his duty to speak, leads another to believe that certain facts exist, and the other person relies and acts on such belief, and will be prejudiced if the former is permitted to deny the existence of such facts.

The court entered judgment notwithstanding the finding of the jury in response to special issue No. 21 with regard to appellant.

The Final Judgment held that the plaintiffs were lawfully retired from the partnership for all purposes as of June 12, 1975, and that appellees were jointly and severally liable to each of the plaintiffs in the amount of $438,000.00 with interest thereon at 6% from June 12, 1975, to the date of judgment and 9% from the date of judgment until paid. Plaintiff Eichelberger accepted the judgment while plaintiff Hughes (appellant) perfected this appeal.

■ In his first two points of error, appellant contends that the court erred by disregarding the jury's finding to Special Issue No. 21. The rule is well-established that the trial court may disregard the jury's answer to a special issue if there is no evidence to support the jury's finding or if the special issue is immaterial. *C & R Transport, Inc. v. Campbell,* 406 S.W.2d 191 (Tex.1966); Tex.R.Civ.P. 301; 4 R. McDonald, Texas Civil Practice §§ 17.31–17.32 (rev. 1971). A special issue can be rendered immaterial by the jury's answer to one or more other special issues which makes the

answer to the alleged immaterial answer void of legal significance. 4 R. McDonald, *supra* § 17.31. In the special issues set forth hereinabove, the jury found that appellant failed to move his practice to the partnership clinic or substantially use the partnership hospital within a reasonable period of time, although he had stated he would do so. One with unclean hands cannot rely on the equitable defense of estoppel. *El Paso National Bank v. Southwest Numismatic Investment Investment Group, Ltd.*, 548 S.W.2d 942 (Tex.Civ.App.—El Paso 1977, no writ). The jury's answers to special issues Nos. 1 through 4, 13, and 14, amounting to a finding of unclean hands, removes any legal significance to the jury's answer to special issue No. 21 and renders it immaterial. *Texas Compensation Insurance Company v. Matthews*, 510 S.W.2d 640 (Tex.Civ.App.—Houston [1st Dist.] 1974, no writ). Consequently, the trial court did not err in disregarding special issue No. 21.

■ Appellant alleges that the partnership agreement did not control the relationship of the partners at the time of the retirement due to the occurrence of certain facts which, under the terms of the agreement, allegedly resulted in the dissolution of the partnership and the substitution of the Texas Uniform Partnership Act for the terms of the agreement. Section 1.5 of the original agreement sets out those events which will cause the dissolution of the partnership. The failure to secure the execution of an amendment, signed by all of the partners, is not such an occurrence under the terms of the agreement or at law.

■ Appellant draws our attention to the fact that a call for additional capital made in May of 1974 was not answered by all of the existing partners. Section 1.5 of the agreement states:

*Term.* The term of the partnership shall commence upon the effective date hereof, and shall continue from year to year thereafter unless terminated upon the happening of any one (1) of the following events:

.  .  .  .  .

(e) The failure of a Partner to make an additional capital contribution, as provided for in Section 2.2 of Article II hereof, unless an election is made as is provided for in Article IV hereof.

Section 4.2(a) of Article IV of the agreement provides:

Upon the happening of any of the events enumerated in Section 1.5(a), 1.5(b), 1.5(c), 1.5(d), 1.5(e), or 1.5(f) of Article I hereof, . . . the Partnership shall be dissolved, terminated and liquidated pursuant to the provisions of Article VII hereof, unless at least one (1) partner agrees in writing to continue the Partnership.

It is uncontested that some of the partners failed to respond to the capital call, and none of the partners executed any agreement for the express purpose of continuing the partnership despite this failure; however, some of the partners signed the amendment to the original agreement. This attempted amendment acknowledged the continuation of the partnership and the validity of the partnership agreement, thus fulfilling the purpose and requirements of section 4.2(a) of Article IV. This intent to continue the partnership was also manifest by numerous acts and oral representations of all the partners, including appellant, in performing under the agreement.

■ Appellant contends that he could not be retired under Section 8.9(b) until at least 51% of the partners had agreed upon the method of determining the fair market value of his interest and until the amount so determined was paid to him. Section 6.2(b) of the agreement provides a binding method of determining such fair market value if the parties cannot otherwise agree. This section is not to be construed as a means of delaying the termination of the agreement as to a party. Rather, we believe the intent of this section is to provide a method of fair valuation of the outgoing partner's interest without the necessity of costly litigation. Consequently, the jury's answer to special issue No. 5 did not require the trial court to hold that appellant was not properly retired.

Appellant contends that the trial court erred in submitting special issues Nos. 1 and 2 as Section 8.9(b) of the agreement was not ambiguous as a matter of law. We disagree. By submitting a special issue to ascertain the intent of the parties to an agreement, the court has determined as a matter of law that an ambiguity exists in the agreement. *Nixon v. First State Bank of Corpus Christi*, 540 S.W.2d 817 (Tex.Civ. App.—Corpus Christi), *writ ref'd n.r.e. per curiam*, 544 S.W.2d 378 (Tex.1976). There is sufficient evidence to support such a conclusion.

Appellant further argues that even if Section 8.9(b) is ambiguous, the interpretation and construction resulting from the jury's answers to special issues Nos. 1 and 2 render Section 8.9(c) meaningless. Section 8.9(c) states that a condition of retirement exists where "[a] partner or partners to this agreement who are doctors of whatever kind in the profession of medicine or dentistry . . . no longer participate in the practice of medicine or dentistry. . . ." The only alternate construction of Section 8.9(b) proffered by appellant or apparent to this court is that retirement will result thereunder only upon the removal of a partner's office from the clinic and/or his failure to use the hospital at all. This construction, however, likewise renders Section 8.9(c) meaningless in that there is no way in which a partner could continue to practice medicine or denistry, while having removed his office from the clinic and/or ceased using the hospital, without suffering mandatory retirement under Section 8.9(b). That is to say, a partner could not face mandatory retirement under Section 8.9(c) without also facing mandatory retirement under Section 8.9(b), as the failure to continue practicing medicine or dentistry implies removal of one's office from the medical clinic and the cessation from use of the hospital under a reasonable interpretation of those terms. Given this irreconcilable conflict between Section 8.9(b) and Section 8.9(c), a secondary rule of construction must be resorted to. In this case the rule that the first provision to appear chronologically controls later conflicting provisions should be applied, eliminating the conflict and the contention that Section 8.9(b) renders Section 8.9(c) meaningless. *Southland Royalty Co. v. Pan American Petroleum Corp.*, 378 S.W.2d 50 (Tex.1964).

Appellant contends that special issues Nos. 1 through 4 were improperly submitted for lack of pleadings. Paragraphs 24 through 26 and 28 of appellees' Second Amended Counter-Petition are a proper basis for the submission of these special issues.

As we have affirmed that appellant was properly retired under the agreement, appellant is entitled only to remuneration for his interest.

Appellant further maintains that the court erred in not permitting him to elect to receive his portion of the profits from the date of dissolution until the date of judgment, in lieu of interest, as provided for in Tex.Rev.Civ.Stat.Ann. art. 6132b § 42 (Vernon 1970). Section 42 provides in pertinent part:

When any partner retires or dies, and the business is continued . . . [he] shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest, or, at his option . . . in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership.

The statute does not dictate when the election is to be made nor has our Supreme Court addressed the issue. In the case before us, appellant did not make such an election prior to its Supplemental Motion for Judgment, filed after the jury had returned its verdict. We hold that appellant was dilatory in seeking this relief. In addition, to recover profits in lieu of interest under Section 42, appellant was required to prove by competent evidence "the profits attributable to the use of his right in the property of the dissolved partnership." This means that appellant must not only prove the profits earned by the partnership after dissolution, *Taormina v. Culicchia*, 355 S.W.2d 569 (Tex.Civ.App.—El Paso 1962, writ ref'd n.r.e.), but must demonstrate

what portion of those profits are directly attributable to his capital investment. This requires more than simply multiplying the percentage figure representing his contribution to capital by the total profits for the period in question. Rather, the portion of the profits attributable to the retiring partner's ownership interest must be distinguished from the portion attributable to the skill, time, efforts, and diligence of the remaining partners. Section 42 does not entitle the outgoing partner or his estate to the profits attributable to the labor and management of the remaining partners. *Timmermann v. Timmermann*, 272 Or. 613, 538 P.2d 1254 (1975) (en banc). In the case before us, it appears from the record that a significant portion of the profits in question was due more to the skill, time, efforts, and diligence of the remaining partners than to appellant's capital contribution. There was no expert testimony as to how the profits should be allocated, however. Consequently, appellant failed to carry his burden of proof.

Most of appellees' cross-points of error have been disposed of by our holdings above. They additionally contend it was error for the trial court to grant pre-judgment interest commencing on the date of dissolution under Section 42. Section 42 does not state when interest is to commence. We approve the rule in *Cauble v. Handler*, 503 S.W.2d 362 (Tex.Civ.App.— Fort Worth 1973, writ ref'd n.r.e.), that interest should commence on the date of dissolution. This is consistent with the provision of Section 42, where the profits which one may elect to receive in lieu of interest are calculated from the date of dissolution. This election is intended to afford the outgoing partner a "species of compulsion" to hasten an orderly winding up of the partnership. *Wikstrom v. Davis*, 211 Or. 254, 315 P.2d 597 (1957). Were interest not intended to run from the date of dissolution, there would be little incentive for the continuing partners to wind up the affairs of the partnership and compensate the outgoing partner for his ownership interest where the partnership was not operating

profitably. Consequently, this cross-point of error is overruled.

Affirmed.