**TEXAS UTILITIES FUEL COMPANY,**
Appellant,

v.

**FIRST NATIONAL BANK IN DALLAS et al, Appellees.**

No. 20436.

Court of Civil Appeals of Texas,
Dallas.

April 17, 1981.

John W. Reynolds, Worsham, Forsythe & Sampels, Dallas, for appellant.

T. Ray Guy, Jenkens & Gilchrist, Dallas, for First Nat. Bank.

John L. Hauer and Ruth J. Abboud, Akin, Gump, Hauer & Feld, Dallas, for Mallory.

Robert H. Fields, Fields, Fields & Hardee, Athens, for other appellees.

Before AKIN, CARVER and STOREY, JJ.

AKIN, Justice.

Texas Utilities Fuel Company, as the buyer of natural gas under a contract, sued the sellers, including First National Bank in Dallas, to enjoin the sellers from selling gas dedicated to the buyer under the contract to a third party operating a brick plant, to obtain specific performance of the natural gas sales contract, and for damages for gas sold in breach of the contract. The sellers responded contending that they had the right to sell unlimited quantities of gas to the brick plant under a reservation clause in the contract. All parties filed motions for summary judgment and asserted that the language of the reservation clause is unambiguous, but each side reads it to support an opposite result. The trial judge granted the sellers' motion but denied the buyer's motion and rendered a judgment that the buyer take nothing. The buyer appeals. We reverse because we hold that the reservation clause does not permit the sellers to

sell unlimited quantities of gas to the brick plant. We also hold that the trial judge erred in striking certain summary judgment evidence showing the circumstances existing at the time the contract between these parties was executed in 1971.

However, we cannot render judgment on buyer's motion for summary judgment as to sellers' liability, because the buyer failed to establish as a matter of law that sellers breached the contract by failing to sell it gas dedicated to the contract since the summary judgment proof fails to establish that the contract provision applicable when insufficient pressure exists has been satisfied. Accordingly, we remand the cause to the trial court for further proceedings consistent with this opinion.

In 1961, buyer's predecessor in interest and sellers, or their predecessors, executed a contract by which the former agreed to purchase, and the latter agreed to sell, all of the natural gas production from certain designated oil and gas leases in Henderson County. In 1971, the parties amended the 1961 contract to accommodate Texas Clay Industries in the event of curtailment of deliveries from its supplier, Lone Star Gas. To accomplish this purpose, the amended contract included the following reservation:

> SELLER also reserves the right to sell to the Texas Clay Industries, Inc.'s brick plant *under ordinary operating conditions up to fifteen million (15,000,000) cubic feet of gas per month.* If the present gas supplier to said brick plant, (Lone Star Gas Company) curtails gas deliveries, no limit is placed on the amount of gas SELLER may deliver to said plant. [Emphasis added.]

Based upon this reservation clause, the sellers first contend that this language permits them to sell unlimited quantities of natural gas to the brick plant for an indefinite period of time once the brick plant's supply of natural gas from Lone Star Gas has been curtailed in any one month. That situation occurred in November 1972. Alternatively, the sellers argue that the 15,000,000 cubic feet per month is cumulative so that the sellers can "make up" the monthly allotment of 15,000,000 cubic feet of gas not sold to the brick plant in months when Lone Star Gas had not curtailed the brick plant's gas supply. Under this theory, there would be a deficit of at least 250,000,000 cubic feet of gas which the sellers would have a right to "make up" before the buyer had any claim to the gas under the contract.

On the other hand, the buyer argues that the language of the reservation neither gives sellers the right to in effect terminate the contract by selling all of the gas to the brick plant nor the right to "make up" for months in which the brick plant sustained no curtailment of its gas supply by Lone Star Gas. Instead, the buyer argues that the unambiguous language supports its position. In this respect, the buyer points to summary judgment evidence, stricken by the trial judge, which establishes the facts and circumstances surrounding the execution of the contract from 1971 to 1976. With respect to performance, from 1971 to early 1976 the stricken summary judgment evidence showed that the sellers' sales of gas to the brick plant never exceeded 15,000,000 cubic feet per month except during months in which Lone Star Gas curtailed the brick plant's supply.

■ We agree with the buyer and hold that the only reasonable reading of the reservation clause permits the sellers to sell up to 15,000,000 cubic feet of gas per month, unless Lone Star Gas curtails deliveries during a month, in which event the sellers could sell an unlimited amount of gas to the brick plant during that month only. In reaching this conclusion, the second sentence of the reservation clause must be read in connection with the first sentence which establishes a limit of up to 15,000,000 cubic feet *per month.* Consequently, it follows that the second sentence which provides for the situation where the primary supplier of gas to the brick plant curtails gas supplies to the brick plant must also be read as limited to a per month basis.

To hold, as sellers would have us do, that once a single curtailment of gas supplies by Lone Star Gas to the brick plant occurred,

then henceforth the sellers could sell all of the gas to the brick plant for an indefinite period, if they so chose, would render meaningless the 15,000,000 cubic foot limitation in the first sentence of the reservation clause and would frustrate the intent of the entire contract as noted *infra*. Thus, if the price of gas rose above that designated in the contract, the sellers would, as they have done, choose to sell all gas to the brick plant. On the other hand, if the price of gas was to dip below the price established in the contract, then the sellers could require the buyer to purchase the maximum amount required of buyer under the contract. Such a construction is untenable.

Because an unambiguous contract must be construed within its four corners to ascertain the intent of the parties, *e. g., Frost National Bank of San Antonio v. Newton*, 554 S.W.2d 149 (Tex. 1977), we turn to other parts of the contract which support our holding. In this respect, the contract, which consists of sixteen typewritten pages, provides that "in consideration of the mutual covenants thereof, Seller agrees to sell and Buyer agrees to purchase and pay for *all gas produced from all leases of Seller.*" Elsewhere in the contract, the seller's delivery capacity is defined as "the *maximum quantity of gas* which in the course of prudent operation (as determined in the sole discretion of Seller, *exercised in good faith*) and the restraint of law or lawful regulation can be delivered to Buyer from Seller's gas reserves per day, averaged over a minimum of seventy-two (72) hours." Furthermore, the contract imposes upon the Seller the duty to install compression facilities, when necessary, to effect deliveries of gas to Buyer. Thus, it is clear from these provisions that the very purpose of the contract was to sell to Buyer the maximum amount of gas possible.

■ Neither can we agree with sellers' alternative contention that this clause can be read so as to reserve to them at least 15,000,000 cubic feet of gas per month, and if gas supplies were not curtailed, then they were entitled to the right of "make up" or to accumulate the unused 15,000,000 cubic feet per month. As we read this provision, it is limited to selling Texas Clay Industries up to fifteen million cubic feet of gas per month. It does not state that this amount is cumulative when Texas Clay requires no gas from sellers in months in which Lone Star Gas, its supplier, fulfills its requirements. Admittedly, the language may have been inartfully chosen; but when the entire agreement is read in light of the attendant circumstances, buyer's construction of the reservation is the only reasonable one to be given this language. Consequently, the summary judgment rendered was improper and must be reversed.

■ We also hold that the trial judge erred in striking summary judgment evidence explaining the circumstances surrounding the execution of the 1971 lease which modified the 1961 lease to accommodate the brick plant. In this respect, it is well settled that extrinsic evidence is admissible for the purpose of applying the contract to its subject matter even though the contract is unambiguous. *E. g., Murphy v. Dilworth*, 137 Tex. 32, 151 S.W.2d 1004, 1005 (1941) (Per Alexander, C. J.). As here, if the meaning of the language used becomes uncertain when applied to the subject matter of the contract, although not otherwise uncertain, parol evidence may be resorted to in aid of applying the language to the subject matter. *Id.* at 1005. Of course, this does not mean that parol evidence may be introduced to vary or contravene the language of the writing or to establish a different contract, but merely to prove the then existing circumstances, so as to enable the court to apply the language used to the existing facts. *Reynolds v. McMan Oil & Gas Co.*, 11 S.W.2d 778, 781 (Tex.Comm'n App.1928, opinion adopted). Such extrinsic evidence can only explain any doubtful relationship of the writing to the relations of the parties and the subject matter of the contract. *Stewart v. Selder*, 473 S.W.2d 3, 7 (Tex.1971). *See also* concurring opinion of Chief Justice Guittard in *Mercantile National Bank v. National Cancer Research Foundation*, 488 S.W.2d 605, 611 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r. e.).

In this respect, the stricken summary judgment evidence shows that the original 1961 contract between the same parties or their predecessors in interest was amended in 1971 by an almost identical contract covering the remaining ten years yet to run on the original 1961 contract, which was for twenty years. The purpose of the 1971 contract was to provide gas to the brick plant when its supply was diminished. The extrinsic evidence of witnesses for both parties presented by deposition and affidavit confirms our reading of the reservation clause, as it was intended to apply to the situation then existing. This parol evidence established that the brick plant was experiencing occasional shortages from its supplier, Lone Star Gas, and the purpose of the clause was to alleviate these shortages so as to permit the brick plant to continue operation. It was not intended to reserve to sellers the right to in effect cancel the contract in the event the price of gas rose above that stated in the contract.

Additionally, appellee Mallory has filed a separate brief, arguing that the trial court's summary judgment should be affirmed with respect to him on grounds independent from those asserted by the other sellers. However, these grounds were not presented to the trial judge in a motion for summary judgment; instead, Mallory adopted only those grounds set forth in appellee First National Bank's motion for summary judgment when he joined in the motion for summary judgment filed by the other appellees other than First National. Accordingly, we are precluded from considering the independent grounds urged by Mallory. Tex.R.Civ.P. 166–A; *Vendig v. Traylor*, 604 S.W.2d 424, 430 (Tex.Civ.App. —Dallas 1980, writ ref'd n.r.e.). Consequently, our disposition with respect to the trial court's summary judgment is applicable to Mallory as well as to the other sellers.

We turn now to whether buyer was entitled to summary judgment. Tex.R. Civ.P. 434. In this respect, under the contract the term "gas" is defined as "all of the legally produced gas *which meets the quality and pressure requirements herein-*

*after set out ...."* [Emphasis added.] The contract further provides that:

> The delivery pressure shall be sufficient to allow gas to enter BUYER'S pipeline system at the working pressure, existing therein from time to time, but *in no event will SELLER at any time be required to maintain pressures at the point of delivery in excess of nine hundred (900) pounds per square inch gauge.* [Emphasis added.]

In this respect, the contract also provides that:

> If and when it becomes necessary to effect deliveries hereunder, SELLER shall install compression facilities and thereupon, BUYER AGREES to pay SELLER, in addition to the price stated in Paragraph 10.1 above and the gathering fee stated in Paragraph 10.2, an additional three cents (3¢) per one thousand (1,000) cubic feet of gas sold and delivered hereunder. If SELLER does not install compressing equipment, BUYER may install and operate the same and deduct that part of its reasonable cost therefor which exceed three cents (3¢) per Mcf amounts otherwise due SELLER hereunder. If both BUYER and SELLER elect not to install and operate compressing equipment, *gas requiring compression shall be released from the contract.* [Emphasis added.]

With respect to these provisions, buyer's summary judgment evidence does not establish, as a matter of law, that sellers have sold gas *dedicated to the contract* in amounts exceeding the 15,000,000 cubic feet restriction in the reservation clause, because the summary judgment evidence does not establish that the seller's gas had sufficient pressure to enter buyer's pipelines and thus to comply with this provision. Consequently, buyer has not conclusively established, as a matter of law, seller's breach of contract. This is true because the record is devoid of evidence pertaining to compliance or noncompliance with the above provision. Thus, we cannot say whether both buyer and seller elected not to install and operate compressing equipment if the pressure was insufficient to enter buyer's pipelines. Con-

sequently, we cannot render judgment for buyer under Tex.R.Civ. P. 434.

Accordingly, we reverse the summary judgment in favor of sellers and remand for proceedings consistent with this opinion.