**SECURITY SAVINGS ASSOCIATION, Appellant,**

v.

**Art B. CLIFTON, Appellee.**

**No. 05–87–01041–CV.**

Court of Appeals of Texas, Dallas.

July 28, 1988.

Rehearing Denied Aug. 31, 1988.

Alan S. Leibel, Michael R. Swan, Michael J. Wagner, Dallas, for appellant.

Harold Hoffman, Keith Zagar, Dallas, for appellee.

Before DEVANY, McCLUNG and BAKER, JJ.

BAKER, Justice.

Security Savings Association appeals from a judgment in which a jury awarded damages and attorneys fees to Art B. Clifton for conversion of Clifton's ten percent interest in a $2,000,000.00 savings account held by SSA. In six principal arguments, SSA contends the trial court violated the parol evidence rule, erred in submitting certain jury questions, erred in awarding exemplary damages, attorney's fees, and prejudgment interest, and attacks the sufficiency of the evidence to support the jury's

findings. We find the award of attorney's fees and calculation of prejudgment interest to be improper. We modify the judgment and, as modified, affirm.

In March 1983, SSA agreed to fund a condominium project known as the "Dove Park Project." SSA agreed to fund the project if Ray J. Stockman, a real estate developer and principal in the project, would agree to pledge the profits realized from the land sale as collateral until the land loans for the project were paid and the construction loan funded. Stockman held the profits amounting to $2,000,000.00 as trustee for: (1) himself, owning $800,000.00; (2) Texas International Properties (TIP), SSA's wholly owned subsidiary, owning $1,000,000.00; and (3) Clifton, owning a $200,000.00 interest by virtue of an assignment from Stockman. Stockman agreed to the pledge and placed the profits in an account with SSA. Clifton received his ten percent interest simultaneously with the pledge and consented to the pledge agreement.

The land loans were paid on July 29, 1983. Before this, Clifton notified SSA that he intended to withdraw his interest when the land loans were paid. SSA ignored Clifton's request and insisted that Stockman repledge the entire $2,000,000.00 as collateral for the construction loan until the permanent loan funded. Stockman agreed but stated that he was without authority to bind Clifton's interest as collateral for the construction loan. Stockman signed the new pledge agreement as SSA demanded, and SSA refused to recognize Clifton's interest or demand. Consequently, Clifton filed suit for conversion of his ten percent interest and for prejudgment and postjudgment interest, punitive damages, and attorneys fees.

SSA asserted two affirmative defenses, arguing that Clifton had released all of his interest in the account by virtue of a settlement agreement in another lawsuit and that Clifton was barred from recovering his interest because he represented SSA as its attorney in the initial real estate transaction. The settlement agreement upon which SSA based its release defense arose from another lawsuit brought by Clifton against TIP and other parties. SSA was not a party to that suit.

In the earlier suit, Clifton claimed a partnership interest in several projects, including the Dove Park Project, and sought his share of the profits. Under the initial settlement agreement in February of 1984, Clifton agreed to release all claims in return for $310,000.00 in the form of cash, promissory notes, and an assignment of 20.75 percent interest or $207,500.00 of TIP's $1,000,000.00 interest in the $2,000,000.00 account held by SSA as collateral for the Dove Park Project. In October of 1984, the parties consummated the settlement by entering into another agreement which essentially effectuated the terms of the February agreement. Under the October agreement, Clifton again released all his claims and reassigned his newly acquired 20.75 interest in the account back to TIP in exchange for $238,671.31. He had already received the cash and promissory notes provided by the February agreement. However, the new agreement contained language which SSA claims supports its contention that Clifton assigned all his interest in the $2,000,000.00 account to TIP, including the ten percent interest he initially acquired from Stockman. Paragraph two of the October agreement states that "Clifton hereby transfers, conveys and assigns to Texas International Properties, Inc. a 20.75% interest in Security Savings Association Certificate of Deposit No. 59–1002464108, *said 20.75% interest being all of Clifton's right, title and interest in and to such Certificate of Deposit*." [Emphasis added].

The jury found for Clifton on every issue submitted and made the following relevant findings concerning SSA's affirmative defenses: (1) that the parties to the October release agreement did not intend to release the ten percent interest that Clifton acquired from Stockman; (2) that the phrase in the release stating "said 20.75% interest being all of Clifton's right, title and interest in and to such Certificate of Deposit" was inserted by mutual mistake; (3) that Clifton received no consideration for the alleged release of the ten percent interest

in issue; and (4) that Clifton did not represent SSA as its attorney. Based on the jury findings, the trial court entered judgment against SSA for the $200,000.00 principal amount, $105,377.21 in interest as of June 23, 1987, $75,000.00 in exemplary damages, and $35,000.00 in attorney's fees.

Before reaching the merits of this case, we first address Clifton's contention that SSA has waived many of the points of error asserted in this appeal. Specifically, Clifton argues that SSA failed to object to the submission of jury questions number two and three, failed to preserve its "no evidence" points, and failed in its motion for new trial to specifically challenge the jury findings it now claims to be against the great weight and preponderance of the evidence.

■ A party must make a specific objection to the submission of a jury question believed to be improper if that party wishes to preserve the error for appellate review. TEX.R.CIV.P. 274; *Vela v. Alice Specialty Co.*, 607 S.W.2d 289, 291 (Tex.Civ.App.—Tyler 1980, no writ). Jury questions number two and three inquire into the intention of the parties to the October release agreement. During the submission conference, SSA objected on the grounds that the release agreement was unambiguous and, therefore, could not support the submission of the questions. SSA takes the same position in this appeal. SSA has preserved its complaint for our review.

■ To preserve a "no evidence" point for appellate review, the objecting party must perform one of the following procedural steps in the trial court: (1) an objection to the submission of the question to the jury; (2) a motion to disregard the jury's answer to the relevant fact question; (3) a motion for instructed verdict; (4) a motion for judgment notwithstanding the verdict; or, (5) a motion for new trial. *Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 822 (Tex.1985). In points of error numbers six, seven, and eleven, SSA complains that there was no evidence to support the submission or the jury's answer to the questions concerning mutual mistake, or to support the award of

exemplary damages. SSA did not object to the questions, nor did it file any of the motions required to preserve these points. Points of error number six, seven, and eleven have not been preserved for review and are overruled.

■ In this appeal SSA asserts that the following two jury findings are against the great weight and preponderance of the evidence: (1) that the parties to the October release agreement included the ten percent interest Clifton acquired from Stockman by mutual mistake; (2) that no attorney-client relationship existed between Clifton and SSA. SSA's motion for new trial states that "[t]he findings of the jury were against the overwhelming weight of the evidence." Clifton takes the position that because SSA failed to specifically identify the numbered findings it challenges in this appeal, it has waived its complaint. We disagree.

■ "Against the great weight and preponderance of the evidence" points must be raised in a motion for new trial in order to preserve the issues for appeal. TEX.R. CIV.P. 324. Furthermore, the objection in the motion for new trial must be specific enough to inform the trial court of the alleged error. TEX.R.CIV.P. 322. To accomplish this end, it is generally required that jury findings be attacked separately in a motion for new trial. *See Biggers v. Continental Bus System, Inc.*, 157 Tex. 351, 303 S.W.2d 359, 368 (1957); *Naranjo v. Cull*, 569 S.W.2d 529, 532–33 (Tex.Civ. App.—Corpus Christi 1978, writ ref'd n.r. e.). However, that is not the case where the jury finds against the objecting party on every question submitted. In such a case, the otherwise general objection that all the findings are against the great weight and preponderance of the evidence is specific. *Cf. Blair v. Buksnys*, 521 S.W. 2d 652, 653 (Tex.Civ.App.—San Antonio 1975, no writ). It is of no significance that SSA chose to attack only a few of the findings in this appeal. SSA has preserved its complaint for our review.

■ In its first principal argument, SSA contends that the October release agree-

ment is not ambiguous. SSA argues that the agreement conclusively establishes its defense of release and demonstrates that the trial court erred in admitting parol evidence to vary the terms of the agreement and in submitting jury questions concerning its construction. In support of its argument, SSA notes that the trial court found the release unambiguous but nevertheless allowed the terms of the release to be varied by parol evidence. Clifton agrees but contends that when the October release is read in light of the February agreement, it unambiguously released only the 20.75 percent interest acquired from TIP and not the ten percent interest acquired from Stockman. In the alternative, Clifton claims that if the October release agreement was ambiguous, it was not intended to release the ten percent interest he acquired from Stockman.

The release is unambiguous on its face. However, it is well established that parol evidence is admissible for the purpose of applying the contract to its subject matter even where the contract is not ambiguous. *E.g., Murphy v. Dilworth,* 137 Tex. 32, 151 S.W.2d 1004, 1005 (1941); *Texas Utilities Fuel Co. v. First National Bank In Dallas,* 615 S.W.2d 309, 312 (Tex.Civ. App.—Dallas 1981, no writ). As here, where the meaning of the language used becomes uncertain when applied to the subject matter of the agreement, although not otherwise uncertain, extrinsic evidence is admissible to aid in construing the agreement. This rule does not operate, however, to provide the parties with an opportunity to vary or contradict the language used or to establish an agreement different from that expressed in the writing. It merely allows the admission of extraneous evidence of the existing circumstances to aid the court in applying the language used to the surrounding facts. *Murphy v. Dilworth,* 151 S.W.2d at 1005; *Reynolds v. McMan Oil & Co.,* 11 S.W.2d 778, 781 (Tex.Comm'n App.1928, opinion adopted). The parol evidence is only admissible to explain the doubtful association of the instrument to and consistent with the relationship between the parties, the subject matter and surrounding circumstances of

the contract. *Murphy v. Dilworth,* 151 S.W.2d at 1006; *Texas Utilities Fuel Co. v. First National Bank In Dallas,* 615 S.W. 2d at 312.

In applying the language to the subject matter of the release, the meaning of the phrase "Clifton hereby transfers, conveys and assigns to Texas International Properties, Inc. a 20.75% interest in Security Savings Association Certificate of Deposit No. 59–1002464108, *said 20.75% interest being all of Clifton's right, title and interest in and to such Certificate of Deposit,"* is uncertain. (Emphasis added). Uncertainty is created by the fact that it is undisputed that the 20.75 percent assigned by Clifton represented $207,500.00, which is 20.75 percent of $1,000,000.00, not $2,000,000.00, the principal balance of the account. Further uncertainty is created because it is undisputed that Clifton owned more that $207,-500.00 of the account. Accordingly, the trial court properly admitted the parol evidence to explain the uncertainty apparent in the construction and application of the language used to the subject matter of the release. *See Murphy v. Dilworth,* 151 S.W.2d at 1005–06.

The extrinsic evidence admitted showed that the parties to the October release agreement never discussed the ten percent interest Clifton acquired from Stockman during their settlement negotiations. Nor does the instrument refer to the ten percent interest. Further, Clifton testified that the parties to the agreement never intended for Clifton to assign the ten percent interest. He further explained that when the language used in the October agreement is read in light of the February agreement, the reference to the 20.75 percent interest being all Clifton's interest clearly refers to only the interest he acquired from TIP. He substantiated this conclusion by explaining that at the time the agreement was signed, TIP's $1,000,-000.00 interest had been separated from Stockman's $800,000.00 and his $200,000.00 interests. Clifton concluded that he had never been led to believe that any of the parties to the release ever intended for him to assign his other ten percent interest.

Clifton W. Brannon, a party to the October release who later became employed by SSA as its Co–Chairman of the Board, testified that he believed it was "obvious" that Clifton's other ten percent interest was included, although he never personally discussed the matter with Clifton. Further, he believed that SSA was included as one of the parties released by Clifton, although SSA was not a party to the suit, nor specifically mentioned as one of the parties released in the agreement. Don G. Jones, another party to the October release agreement who also later became employed by SSA as its other Co–Chairman of the Board, testified that he intended for the release to include all of Clifton's interest in the $2,000,000.00, although he stated he did not know that Clifton owned any other interest in the account. He also stated that he believed that Clifton released all his claims against SSA under the terms of the agreement.

Although controverted, this evidence does not vary or contradict the terms of the agreement, nor does it work to establish a contract different from that expressed in the release. It only explains the uncertain meaning of the language "said 20.75% interest being all of Clifton's right, title and interest in and to such Certificate of Deposit." The evidence having been properly admitted, SSA's points of error numbers one and two are overruled. *See Brown v. Havard,* 593 S.W.2d 939, 942 (Tex.1980).

■ In a similar argument, SSA contends that the trial court erred in submitting the jury questions regarding the intent and meaning of the release to the jury because the court had earlier held that the agreement was unambiguous. We disagree. This court is not bound by the trial court's determination because whether a contract is ambiguous is a legal question fully reviewable by an appellate court. *See R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518 (Tex.1980).

Furthermore, where application of the language used to the subject matter of the contract creates a genuine uncertainty as to which of two meanings is correct, the issue is properly resolved by a jury. *Havard v. Brown,* 577 S.W.2d 757, 760 (Tex. Civ.App.—San Antonio 1979), *aff'd,* 593 S.W.2d 939 (Tex.1980). This is true, of course, unless the parol evidence is undisputed and resolves the ambiguity as a matter of law. *See Harris v. Rowe,* 593 S.W. 2d 303, 306 (Tex.1979); *Noble v. Hunter,* 441 S.W.2d 580, 583 (Tex.Civ.App.—Amarillo 1969, no writ). Here a genuine uncertainty existed, and the extrinsic evidence was controverted. Accordingly, the questions were properly submitted to the jury. SSA's points of error number three, four, and five are all overruled.

■ Next, in point number eight, SSA contends that the jury's answer to question number four is against the great weight and preponderance of the evidence.[1] In response to question number four, the jury found that the parties to the October release agreement included by mutual mistake the language "all of Clifton's right, title and interest in and to such Certificate of Deposit." This jury finding is immaterial. A finding becomes immaterial when the jury's answer to one or more other jury questions renders the finding in question void of legal significance. *Hughes v. Aycock,* 598 S.W.2d 370, 374–75 (Tex.Civ.App. —Houston [14th Dist.] 1980, writ ref'd n.r. e.). As outlined above, the jury had already properly determined that the parties to the release did not intend to include the ten percent interest Clifton acquired from Stockman. Consequently, the jury's finding of mutual mistake is of no legal significance and immaterial. Any error in submitting it to the jury was harmless because the jury had already independently determined that the release did not include Clifton's ten percent interest. *See Barclay v. Johnson,* 686 S.W.2d 334, 338 (Tex.App.—

---

1. We note that SSA has mislabeled its eighth and twelfth points of error. What SSA contends is a finding by the jury "against the great weight and preponderance of the evidence" is, because Clifton had the burden of proof, properly a contention of "insufficient evidence" and will be

treated as such. *See Superior Trucks, Inc. v. Allen,* 664 S.W.2d 136, 145 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.); *Killian v. Trans Union Leasing Corp.,* 657 S.W.2d 189, 192 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.).

Houston [1st Dist.] 1985, no writ). SSA's point of error number eight is overruled.

■■■ SSA next contends that the jury's finding that no attorney-client relationship existed between Clifton and SSA is against the great weight and preponderance of the evidence. In reviewing an against the great weight of the evidence challenge, this court must, after examining all of the evidence, determine if the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986). Because this court has no fact finding authority, it cannot substitute its judgment for that of the trier of fact, even when after reviewing the evidence it may have reached a different conclusion. *Clancy v. Zale Corp.,* 705 S.W.2d 820, 826 (Tex. App.—Dallas 1986, writ ref'd n.r.e.).

The evidence reveals that Clifton is a licensed attorney in the State of Texas. Martin Ripoll, the title company officer who closed the initial transaction, testified that he believed Clifton represented SSA because prior to closing Clifton stated there was no need for any other attorney to review the documents because he represented everyone in the transaction. Jack Watson, SSA's Chairman of the Board, testified that he was sure Clifton represented SSA because he drafted all the instruments. Furthermore, Ray Stockman trustee of the $2,000,000.00 account, testified that he assumed Clifton represented everyone. Clifton maintained, on the other hand, that he did not represent SSA and had specifically told SSA that he could not because of a possible conflict of interest. He testified that he never received any attorney's fees from SSA and that a Dennis Shirk represented SSA in the transaction. Watson stated that he could not remember whether SSA paid Clifton any attorney's fees. The closing statement indicated that Clifton received attorney's fees from Stockman for preparation of the documents, although Clifton testified that TIP actually paid him.[2]

The evidence admitted at trial raised fact issues which the parties sharply disputed.

The jury resolved them adversely to SSA. While there may be some evidence supporting SSA's position and while this Court might have reached a different conclusion, we are not at liberty to disturb a jury verdict which necessarily rests on the credibility of the witnesses and weight given to their testimony. *Clancy v. Zale Corp.,* 705 S.W.2d at 826; *State & County Mutual Fire Insurance Co. v. Kinner,* 314 S.W.2d 871 (Tex.Civ.App.—Waco), *aff'd,* 159 Tex. 290, 319 S.W.2d 297 (1958). We hold that the jury's finding to the jury question challenged by SSA is not so contrary to the overwhelming weight of the evidence as to be clearly erroneous and unjust. SSA's ninth point of error is overruled.

■■■ In its tenth point, SSA contends that the trial court erred in awarding Clifton attorney's fees because they are not recoverable in an action for conversion. *See Kilgore Federal Savings & Loan v. Donnelly,* 624 S.W.2d 933, 938 (Tex.App.—Tyler 1981, writ ref'd n.r.e.). Clifton attempts to justify the award of attorney's fees under article 38.001 of the Texas Civil Practice and Remedies Code on the basis that the issue of breach of contract was tried by implied consent since SSA failed to object to the admission of the evidence supporting a breach of contract action. Clifton concedes, however, that his pleadings do not contain a specific allegation of breach of contract, nor was an issue submitted to the jury on his breach of contract theory. Clifton argues that submission of the issue was unnecessary because the facts necessary to establish a breach of contract action were undisputed. We disagree. By failing to allege and submit his breach of contract theory to the jury or to the court in a motion for a directed verdict, Clifton has failed to preserve this theory for our review. *See State v. J.M. Huber Corporation,* 145 Tex. 517, 199 S.W.2d 501, 502 (1947); *Pitzer & West v. Williamson,* 159 S.W.2d 181, 182 (Tex.Civ.App.—Fort Worth 1942, writ dism'd). The award of Clifton's attorney's fees is without support

---

**2.** SSA did not acquire TIP as a subsidiary until December 31, 1983.

in the record. SSA's tenth point of error is sustained.

 SSA next attacks the award of exemplary damages. In points of error twelve, thirteen, and fourteen, SSA contends that the trial court failed to fully instruct the jury on the issue of malice, the jury's finding of malice was against the great weight and preponderance of the evidence, and the jury's finding of $75,000.00 in exemplary damages was grossly excessive and influenced by passion and prejudice. Specifically, SSA claims that the trial court failed to fully instruct the jury in determining whether SSA acted with malice because it failed to instruct the jury that wanton and malicious conduct should not be found when a defendant acted under a good faith belief that it was exercising a valid right. The instruction submitted by the court read as follows:

> In connection with the foregoing special issue, you are instructed that wanton and malicious conduct is characterized by ill will or intent to injure or by wrongful conduct which is intentional and without just cause or excuse. In order for a person to have acted with malice, he must do more than merely withhold another's property.

SSA objected to this instruction and requested the court to also include the following language: "An act is not malicious merely because it is unlawful or wrongful. Detention of property can be done in good faith if the person believed he was exercising some right." The trial court refused to add the additional language.

 The Texas Rules of Civil Procedure require the trial court to "submit such explanatory instructions and definitions as shall be proper to enable the jury to render a verdict." TEX.R.CIV.P. 277. Under this rule, the trial court has considerable discretion in deciding which instructions are necessary and proper when submitting issues to the jury. *See Smith v. Smith,* 720 S.W. 2d 586, 595 (Tex.App.—Houston [1st Dist.] 1986, no writ). At a minimum, however, the trial court must define those words and other technical phrases that have a distinct legal meaning. *Smith v. Smith,* 720 S.W.

2d at 596; *Rendon v. Texas Employers' Insurance Association,* 599 S.W.2d 890, 896 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.). Anything else, no matter how interesting or relevant to the case, which does not aid the jury in answering the issue is not required to be submitted. *Rendon v. Texas Employers' Insurance Association,* 599 S.W.2d at 896. This is because an explanatory instruction serves only to aid and assist the jury in answering the questions submitted by the court. *Hamblet v. Coveney,* 714 S.W.2d 126, 129 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). Therefore, explanatory instructions should be submitted when, in the sole discretion of a trial court, they will help the jury to understand the meaning and effect of the applicable law and presumptions. *Smith v. Smith,* 720 S.W.2d at 596; *Southern Pacific Transportation Co. v. Garrett,* 611 S.W.2d 670, 674 (Tex.Civ.App.—Corpus Christi 1980, no writ). Absent the showing of a denial of a party's rights which was reasonably calculated to cause and probably did cause rendition of an improper verdict, there is no abuse of discretion. *Hamblet v. Coveney,* 714 S.W.2d at 129.

A review of SSA's requested instruction reveals that it emphasizes SSA's defensive argument that it could not have acted maliciously when it detained Clifton's property in belief that it had a right to do so. The trial court may have refused to include SSA's additional instructions for the reason that it may have unduly called attention to SSA's affirmative defenses. *See Southern Pacific Transportation Co. v. Garrett,* 611 S.W.2d at 674. The trial court could have also determined that the additional language was not reasonably calculated to aid and assist the jury in understanding the legal concept of malice and the effect of the applicable law and presumptions. Therefore, it cannot be said that the trial court abused its discretion in refusing to include the additional instructions requested by SSA. Moreover, SSA has not alleged, nor has it shown, that the trial court's refusal to submit its additional instruction resulted in a denial of its rights which was reasonably calculated to cause and probably did cause the rendition of an

improper verdict in this case. Consequently, SSA has failed to demonstrate harmful error, if any, under the circumstances of this case. TEX.R.APP.P. 81(b); *see also Rendon v. Texas Employers' Insurance Association,* 599 S.W.2d at 896. SSA's thirteenth point of error is overruled.

 SSA next contends that the jury's finding of malice was against the great weight and preponderance of the evidence. As previously indicated, this point is properly one of factual insufficiency, and when presented with a factual insufficiency challenge, this court must, after reviewing all of the evidence, determine whether the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Killian v. Trans Union Leasing Corp.,* 657 S.W.2d 189 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). Furthermore, the jury, as exclusive trier of the facts, had the sole responsibility of evaluating the witnesses, their credibility, and the weight given to their testimony. *Killian v. Trans Union Leasing Corp.,* 657 S.W.2d at 193. In addition, a jury award of punitive damages will be sustained if the evidence demonstrates that the defendant acted with conscious indifference to the rights of others. *Trenholm v. Ratcliff,* 646 S.W.2d 927, 933 (Tex.1983).

The evidence in this case supports the jury's finding of malice and the award of exemplary damages. As noted above, SSA had agreed to release the entire $2,000,-000.00 account when the land loans were paid and the construction loan funded. Prior to that time, Clifton notified SSA that he intended to withdraw his $200,000.00 interest when the account was released. However, SSA refused to release the funds and required Stockman to repledge the entire $2,000,000.00 as collateral until the permanent loan funded. SSA ignored Clifton's request despite Stockman's statement that he had no authority to bind Clifton's interest as collateral until the permanent loan funded. SSA never sought Clifton's consent or approval in pledging his $200,000.00 interest as collateral until the permanent loan funded. In fact, SSA refused to recognize Clifton's interest despite his demand for its release. SSA claims that it withheld Clifton's interest because it believed that Clifton had assigned all his rights in the account by virtue of a settlement agreement to another lawsuit and because it believed that Clifton was barred from acquiring any interest in the account because he represented SSA as its attorney in the initial real estate transaction. The evidence discloses, however, that the settlement agreement upon which SSA bases its defense of release was not created until after SSA had refused to release Clifton's interest in the account. Therefore, SSA, in good faith, could not have relied upon its defense of release in withholding Clifton's interest. Furthermore, the jury rejected SSA's argument that Clifton had represented it in the initial real estate transaction. The evidence in this case shows that SSA acted with conscious disregard for Clifton's rights. This is sufficient evidence to support the jury's award of punitive damages. *See Trenholm v. Ratcliff,* 646 S.W.2d at 933. SSA's twelfth point of error is overruled.

 SSA also complains that the award of $75,000.00 in exemplary damages was excessive. We disagree. The amount of exemplary damages is normally within the province of the jury, and in assessing the amount of such damages, the jury may consider many factors, including the amount of attorney's fees, the time and inconvenience in being forced to prosecute the claim, the nature of the conduct involved, and the situation and sensibilities of the parties concerned. *Tatum v. Preston Carter Co.,* 702 S.W.2d 186, 188 (Tex.1986). The ratio between actual and punitive damages is also an important factor in determining whether an award of exemplary damages is excessive. *Christopher v. General Computer Systems, Inc.,* 560 S.W.2d 698, 707 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.). Several of these factors support the jury's award in this case. Besides the amount of attorney's fees Clifton incurred as a result of SSA's conduct, the record discloses that SSA deliberately withheld Clifton's interest without just cause or excuse. In addition, given the relative sophistication and bargain-

ing positions of the parties, the jury could have found that public policy would be properly served by discouraging other financial institutions from acting with intentional disregard for the rights of others. Moreover, the award of $75,000.00 in punitive damages, as found, is not disproportionate to the finding of actual damages in the amount of $200,000.00 and $105,377.00 in accrued interest. Consequently, we hold that the amount of exemplary damages awarded was not excessive. SSA's fourteenth point of error is overruled.

■ SSA next contends that the trial court erred in calculating the award of prejudgment interest from March 30, 1983, the date Clifton received his interest, rather than from six months after the date of the alleged conversion on July 29, 1983. In support, SSA cites *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex. 1985), and calls our attention to the recent amendment of article 5069–1.05 of the Texas Revised Civil Statutes which became effective September 1, 1987. The recent amendment to this statute states that in property damage cases, "prejudgment interest accrues on the amount of judgment during the period beginning on the 180th day after the date the defendant receives written notice of the claim or on the date suit is filed." TEX.REV.CIV.STAT.ANN. art. 5069–1.05, § 6(a) (Vernon Supp.1988). SSA argues that since conversion is a form of property damage, prejudgment interest should not begin to accrue until six months after the date of conversion. Alternatively, SSA argues that, at the very least, prejudgment interest should have been calculated from the date of conversion, July 29, 1983. Clifton argues, however, that the trial court's calculation of prejudgment interest beginning on March 30, 1983, is correct because the property that was converted on July 29, 1983, was $200,000.00, plus interest accrued from March 30, 1983.

In conversion cases, the rule is well established that the plaintiff, if successful, is entitled to recover not only the value of his property on the date of conversion, but also

legal interest for the loss of the use of the property from the date of conversion until the date of judgment. *DeShazo v. Wool Growers Central Storage Co.*, 139 Tex. 143, 162 S.W.2d 401, 404 (1942); *Donnelly v. Young*, 471 S.W.2d 888, 891 (Tex.Civ. App.—Fort Worth 1971, writ ref'd n.r.e.). *See also Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480, 486–487 (Tex.1978) (distinction between interest as damages and interest as interest abolished). Accordingly, the sixth month accrual period for prejudgment interest as established by the Supreme Court in *Cavnar* is not applicable in this case. Furthermore, as SSA concedes, section 6(a) of article 5069–1.05 is not dispositive here as the judgment in this case was rendered before the effective date of the statute.[3] TEX. REV.CIV.STAT.ANN. art. 5060–1.05, § 6(a), (Vernon Supp.1988). SSA's fifteenth point of error is overruled.

■ SSA's alternative point of error is persuasive in that the trial court should have calculated prejudgment interest from July 29, 1983, the date of conversion. Under the facts of this case, prejudgment interest cannot be properly awarded for any amount of time prior to the date the tort was committed, as Clifton had not suffered any damages until that date. *See Imperial Sugar Co., Inc. v. Torrans*, 604 S.W.2d 73 (Tex.1980); *Republic National Bank of Dallas v. Northwest National Bank of Fort Worth*, 578 S.W.2d 109 (Tex. 1978). However, under the pleadings and the evidence admitted at trial, Clifton was entitled to recover the amount of interest his money earned from March 30, 1983, until the date of conversion on July 29, 1983, because this interest was also converted by SSA. Nevertheless, Clifton was not entitled to recover interest for that period at ten percent, the prejudgment interest rate, when the undisputed evidence established the appropriate rates of interest. The trial court's calculation of interest earned on the account prior to the conversion at the prejudgment rate of ten percent was erroneous. This amount should

---

**3.** We express no opinion as to the application of § 6(a) of art. 5069–1.05 of the Texas Revised

Civil Statutes to the calculation of prejudgment interest in conversion cases.

have been calculated at the rates of interest the account earned prior to conversion and included as part of the principal which SSA converted on July 29, 1983. Therefore, Clifton is entitled to recover $5,953.90, representing the amount of interest his money earned under the terms of the saving account prior to conversion, and $80,321.77, representing the proper amount of prejudgment interest earned on the $205,953.90 converted on July 29, 1983, until the date of judgment. SSA's sixteenth point of error is sustained and the judgment modified to reflect the proper award of prejudgment interest that the trial court should have awarded. TEX.R.APP.P. 80(b).

The trial court's judgment is modified to reflect the amount converted as $205,-953.90, to delete the award of attorney's fees, and to reflect the correct amount of prejudgment interest as $80,321.77, and as modified, it is affirmed.